JOHN H. WHITE ET AL., TRUSTEES, *vs.* JULIA P. ALLEN ET AL.

First Judicial District, Hartford, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

*P*, a testator, whose will was executed in 1872 and who died in 1879, gave the residue of his estate to trustees, the income of which was to be paid over to his widow and others during her life, and thereafter to the testator's four sisters, *A*, *B*, *C* and *D*, in equal portions, during their respective lives. On the death of either *B* or *C* (both of whom were childless), her share of the income was to be paid to her surviving sisters, equally, and on the death of *A* or *D* their respective portions were to be paid to their children during the lifetime of said children, the issue of each child taking the part of any deceased parent. Upon the decease of the last of said children the remainder was to be transferred in fee to the grandchildren of *A* and *D*, or their issue or legal representatives, according to the law of descent. *A* died in 1888, *B* in 1889 and *C* in 1902; *D* is still living. In a suit by the trustees to determine the construction of the will, it was *held:* —

1. That inasmuch as the provision for the payment of income to the children of *A* and *D*, and to the issue of any of such children as might die, rendered it possible for the income to go to those who were not " the immediate issue or descendants " of such as were in existence at the time of making the will, that feature of the trust was void as a violation of the statute against perpetuities (Rev. of 1866, p. 536, § 4) in force until after *P's* death in 1879.
2. That the gifts of income to the issue of *A* and *D*, who took as purchasers and not by inheritance, were contingent and did not vest in them upon the death of *P*.

3. That the scheme of equality, so clearly marked out by the testator, would be defeated, if the other provisions of the trust which were to go into effect upon the decease of *A* or *D*, as well as the gift over of the remainder in fee, were to be upheld apart from the illegal clause; and therefore, upon the decease of A in 1888, the whole trust terminated and the property constituting the trust fund was ready for division as intestate estate of *P*.

Where several independent testamentary trusts are created, the illegal ones may be cut off and the valid ones permitted to stand, thus effectuating the intent of the testator as far as the law will permit.

For the purpose of applying the rule against perpetuities, both men and women are considered capable of having issue as long as they live.

Argued October 8th—decided December 18th, 1903.

SUIT to determine the construction of the will of William S. Pierson of Windsor, deceased, brought to and reserved by the Superior Court in Hartford County, *Shumway, J.*, upon an agreed statement of facts, for the advice of this court.

*Edward M. Yeomans*, for the plaintiffs.

*Joseph L. Barbour*, for Julia P. Allen et al.

*John R. Buck* and *Arthur F. Eggleston*, for Julia S. Coffin et al.

PRENTICE, J. William S. Pierson died April 18th, 1879, leaving a considerable estate, consisting of both real and personal property, and a will executed March 25th, 1872, which was subsequently duly probated. His sole heirs at law were his four sisters, Nancy S. Spalding, Lydia P. Dexter, Olivia Pierson and Julia P. Allen, and his widow. His estate was duly settled and all claims and legacies paid. The widow died in 1896. In his will the testator, after making provision for his widow and others, gave all the residue and remainder of his estate to trustees. This trust required that the principal thereof, save some small amounts, be held by the trustees, and out of the income therefrom certain sums be paid quarterly or annually to the widow and other persons so long as the widow should live, and that at

her death certain persons should be paid specified sums of money. These provisions of the trust, which embody gifts to numerous persons and purposes, need not be more fully stated, as they have, as far as appears, been fully complied with and do not concern the present controversy.

The questions which give rise to this application grow out of a paragraph of the will, which, for convenience sake, we will designate as paragraph 14, although unnumbered in the instrument itself. This paragraph, which relates to said trust and follows the provisions already referred to, is as follows : —

" After the payment of my debts and the cost and charges of the execution of these trusts, of the insurance and taxes on my property and estate, and for carrying out and fulfilling of the bequests and directions herein, out of my property and estate or the income thereof, my executors and trustees shall pay the residue and remainder of the rents, interest and profits of my property and estate annually in equal portions, subject to the limitation hereinafter made, to my sisters, Nancy S. Spaulding, Lydia P. Dexter, Olivia Pierson and Julia P. Allen, during the term of their natural lives, and on the death either the said Nancy or Olivia the portion of the said Nancy or Olivia shall be paid to the survivors of my sisters in equal portions, and on the death of said Lydia or Julia their respective portions shall be paid to the children of said Lydia or Julia, the issue of said children taking the part of any deceased parent, for and during the natural lives of all the children of said Lydia and Julia, and on the death of all the said children of said Lydia and Julia, my executors and trustees shall pay, assign, transfer and set over all my property and estate to the grandchildren of my said sisters, Lydia and Julia, or their issue or legal representatives, according to the law of descent or distribution to be and to belong to them and their heirs forever."

The plaintiffs are the successors of the original trustees, and now have in their hands over $400,000 belonging to the principal of said fund and subject to the operation of the provisions of said paragraph.

Said Lydia P. Dexter died May 19th, 1888; said Nancy S. Spalding, December 2d, 1889; and said Olivia Pierson, April 3d, 1902. Said Julia P. Allen is still alive.

Mrs. Dexter left two children, to wit, Julia S. Coffin, born in 1839, and Annie P. Allen, born in 1842. A son, Edwin D. Dexter, born in 1846, died January 26th, 1886, leaving one child, born January 15th, 1869, who now survives. Mrs. Coffin, at her mother's death, had four children, born, respectively, November 9th, 1862, April 25th, 1868, January 15th, 1871, and December 2d, 1873. All are now alive. Annie P. Allen, at the time of her mother's death, had one child, now alive, born May 8th, 1865.

Nancy S. Spalding and Olivia Pierson died childless.

Julia P. Allen has four children, born, respectively, February 11th, 1851, January 8th, 1860, January 1st, 1863, and April 29th, 1865; and five grandchildren, born, respectively, May 4th, 1887, July 18th, 1888, June 29th, 1890, April 13th, 1895, and June 2d, 1901.

Certain of the questions presented have arisen or assumed importance by reason of this family history. The complaint states thirteen questions concerning which the advice of the Superior Court, and, upon the reservation, our advice, is asked. We deem it unnecessary to give a direct answer to any of these questions, since they all, in our opinion, involve the unwarranted assumption that the trust, in so far as it was embraced in said paragraph, remained a continuing one after the death of Mrs. Dexter in 1888.

The gifts over, after the deaths of Lydia and Julia, have been attacked by counsel representing the interests of the latter and her children as being in contravention of the statute against perpetuities. Counsel for the Dexter interests, while concurring in the invalidity of the gift over of the Allen share, have sought to defend that of the Dexter share. Neither counsel has raised any question as to the validity of any of the antecedent provisions of the trust. In this they have quite likely been prompted by a prudence born of a desire to best subserve their clients' interests under somewhat uncertain conditions. No claim has been made and no

brief filed on behalf of the estate of the testator, or the estates of Nancy S. Spalding or Olivia, from which sources such a claim would most naturally come. We cannot, however, overlook the patent fact that the testator has sought to make beneficiaries of the annually accruing income out of grand-children of Lydia and Julia, which grandchildren might be the children of children not born to Lydia or Julia until subsequent to the time of the making of the will. (See Title XXXVII, Chap. 1, § 4, of the Revision of 1866, for the statute as it was until after the testator's death.)

It is true that no children were in fact born to either Mrs. Dexter or Mrs. Allen after the execution of the will. That fact, however, is of no consequence. The law recognizes such an event as having been among the possibilities. "For the purpose of applying the rule against perpetuities, both men and women are considered capable of having issue so long as they live." *Jee* v. *Audley*, 1 Cox Ch. 324; *In re Sayer's Trusts*, L. R. 6 Eq. 318, 319; 71 Law Times, 186; Gray on Perpetuities, §§ 215, 376. The law looks forward from the time the limitation is made to see what may be, not backward to see what has been. It regards the possible, not the actual. *Rand* v. *Butler*, 48 Conn. 293; *Tingier* v. *Chamberlin*, 71 id. 466; *Thomas* v. *Gregg*, 76 Md. 169. The will gives portions of the income, in the event of the death of either Lydia or Julia, to their respective children, without limitation to those then living, and then provides that the issue of any deceased child should take the share of its parent. Clearly here is a possibility that persons not the immediate issue or descendants of persons in being at the time of the making of the will would take. This result would not be avoided by construing this provision to apply only to cases where children of Lydia or Julia had died prior to their parent's death leaving issue surviving at the time of such death.

The gift of income to the issue of the children of Lydia and Julia cannot be supported upon the ground that they take by inheritance and not by purchase. The argument and conclusions in *Andrews* v. *Rice*, 53 Conn. 566, and *Landers* v. *Dell*, 61 id. 189, are decisive upon this point. The

gifts of income to the issue of Lydia and Julia are clearly contingent, and did not vest in them upon the death of the testator. They are, furthermore, gifts for life only and not of estates of inheritance.

There remains to be considered the results upon the trust embraced in paragraph 14, to which these conclusions lead. In *Kennedy* v. *Hoy*, 105 N. Y. 134, 137, the rule governing this class of cases is stated as follows : " Where in a will some trusts are legal and others illegal, if they are so connected together as to constitute an entire scheme, so that the presumed wishes of the testator would be defeated if one portion were held legal and other portions illegal, or if manifest injustice would result to the beneficiaries under the will, or some of them, by holding one trust legal and the others illegal, then all the trusts must be construed together, and all must be held to be illegal, and fall together. But when several trusts are created, and they are independent of each other, each trust complete in itself, and the legal can be separated from the illegal and upheld without doing injustice, or defeating what the testator might in the emergency be presumed to wish, the illegal trust may be cut off and the legal permitted to stand, and thus the intention of the testator be effectuated so far as the law will permit." This rule has been followed in a number of New York cases : *Benedict* v. *Webb*, 98 N. Y. 460 ; *Underwood* v. *Curtis*, 127 id. 523 ; *Tilden* v. *Green*, 130 id. 29.

As applied to cases in which the connection between the legal and the illegal provisions is of such a character that the avoidance of the illegal and the execution of the legal would inevitably result in the destruction of the testator's testamentary scheme and defeat his main purpose and intent, the principles of the New York cases were recognized in *Fosdick* v. *Fosdick*, 6 Allen, 41, and *Thomas* v. *Gregg*, 76 Md. 169, and have received our approval upon several occasions. *Andrews* v. *Rice*, 53 Conn. 566 ; *Morris* v. *Bolles*, 65 id. 45 ; *Ketchum* v. *Corse*, ibid. 85.

The testator's scheme, to effectuate which this will was made, and his purpose and intent therein in so far as the

estate coming within the purview of paragraph 14 is concerned, are apparent. He had provided for his widow and such other persons and objects as he desired to remember. Certain of these provisions were made prior to the gift of the residue of the estate in trust. Others were involved in the trust. The latter, however, were of such a character that they would all be satisfied either immediately or upon the death of the widow. The most important benefactions contemplated by the testator remained to be bestowed. A large estate remained to be disposed of. The testator's four sisters and their descendants were chosen as the recipients. Paragraph 14 contains the testator's directions as to the manner of bestowal. The scheme adopted involved the continuance of the trust in the residue of the estate after the widow's death and until the last of the children of his sisters had died, and the division at that time of the principal fund. All interest under the trust prior to the widow's death, save such as had otherwise been disposed of, all right to its income thereafter, and all right to the principal of the fund upon final distribution, was confined to the sisters and their descendants. Two of the sisters were childless, one was a spinster, and the other was well along in years. The other two were married and had children. With these facts in mind, the testator formulated the provisions of paragraph 14. It needs only a hasty study of these provisions to convince one that the testator, whatever may be said of the legal precision of the language employed, had the distinct purpose in mind of accomplishing strict equality and impartiality in the bestowal of his benefactions, not only as between his sisters but also as between their several stocks. This scheme of equality is attempted to be so fully marked out that it extends not only to the stocks but to the members comprising each stock in each successive generation until the final division, and then in that division. For fear that some inequality in this regard might be accomplished, " issue " of deceased children, and " issue or legal representatives " of grandchildren, are substituted for the deceased. Greater solicitude for equality, based upon the

system of blood succession recognized by law, could scarcely be evinced. Nowhere else in the will is there shown any purpose to depart from this controlling plan and purpose. The provision of the paragraph following, that Julia, by reason of her being "so situated as to require a certain income," should have the first right to $2,000 of annual income, cannot, under the circumstances, be fairly so regarded.

We have now to consider the effect upon the will of an avoidance of all gifts of income to the issue of children, the remaining provisions of the will being allowed to stand. When Mrs. Dexter died, one of her children had already died leaving a child then surviving. This child, we have seen, was forbidden by the statute from taking the share intended for her by the testator. Herein the testator's intent was defeated and the scheme of his will frustrated. Whether the result of this inability to take be said to be that the other children of Mrs. Dexter would take a larger share, or that income would accumulate in the hands of the trustees, or that there arose a partial intestacy, the consequence in either case was a more or less magnified failure of the scheme of equality. By a rare good fortune none other of the seven children of Mrs. Dexter and Mrs. Allen have as yet died. As their ages range from sixty-four to thirty-eight, it is apparent that the time is not far distant when their number will again be invaded by death with the same result as in the former case. As time passes the number of those who are living to take their appointed shares will be reduced to a few. Possibly that few will belong to one branch of the family, the other thereby being deprived of all benefits from the income. Eventually there will be one survivor only to take, the rights represented by all the others having lapsed. It is unnecessary to solve, or even attempt to state, all the problems which this history might develop. It is only pertinent to appreciate how thoroughly the testator's plan in the creation of his trust would by such a process be overthrown and his will made to accomplish that which he most ardently strove to avoid. A more complete shipwreck of a testamentary scheme could scarcely be im-

agined, and it would be inevitable. The inexorable law of life and death would furnish the necessary conditions.

These observations make it certain that the provisions of paragraph 14 are all a part of one entire comprehensive testamentary scheme, and that many of the provisions of that scheme are so connected and interwoven with the illegal gift of income to the issue of the children of Lydia and Julia, and so inseparable from it, that the whole of the scheme, in so far as it is so connected and inseparable, must be declared illegal, if the testator's wishes and purposes are not to be defeated. The illegal provision is so connected with otherwise legal provisions, that, borrowing the language of *Andrews* v. *Rice*, the latter " cannot be separated and carried into effect without involving consequences substantially and materially different from what the testator intended. " They must, for that reason, as we said in that case, fall with the illegal provision. *Andrews* v. *Rice*, 53 Conn. 566, 571; *Ketchum* v. *Corse*, 65 id. 85.

It remains to inquire to what extent the connection between the illegal gift and the other provisions of paragraph 14 is of such a character that the latter cannot be upheld. It is our duty to sustain the provisions of the will to the fullest extent that we can, and thereby carry into effect the testator's intent. Until Mrs. Dexter or Mrs. Allen should die, the illegal provision could have no untoward effect upon the testator's purpose. It bore no relation to existing conditions. As soon as Mrs. Dexter died, the situation became changed. The illegal provision at once inevitably became a menace to the testator's purpose and plan. The provisions of the trust in favor of the four sisters of the testator, contained in paragraph 14, in so far as they relate to the time antecedent to Mrs. Dexter's death, may therefore be fairly held to be separable from and independent of the illegal provision, and so upheld. Those which relate to time subsequent to her death, cannot be separated and upheld without thereby defeating the testator's purpose, and must therefore be declared void.

The gift over of the trust fund is so clearly dependent upon

the precedent provisions that it must for that reason, if for no other, be declared void.  *Proctor* v. *Bishop*, 2 H. Bl. 358 ; *Ketchum* v. *Corse*, 65 Conn. 85.

The Superior Court is advised that the gift over of the trust fund to the grandchildren of Lydia and Julia or their issue or legal representatives, as contained in paragraph 14 of said will, was void from the beginning ; that upon the death of Mrs. Dexter the trust to pay income to the sisters of the testator, or any of them, or to their children or descendants, or any of them, also contained in said paragraph, terminated, and that thereupon the trust fund was ready for division to those entitled to receive it as its distributees as the intestate estate of the testator.

No costs in this court will be taxed.

In this opinion the other judges concurred.