WESTPORT PAPER-BOARD COMPANY, INC., ET ALS. *v.* HORACE W. STAPLES ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued June 12—decided July 25, 1940.

*William Reeves* and *John S. Barton,* for the plaintiffs.

*S. Russell Mink,* with whom, on the brief, was *Frederick W. Beach,* for the defendants Horace W. Staples et als.

*James E. Rhodes, 2d,* for the defendants Rosemary K. Staples et als.

*Harry Sherwood,* with whom was *John Avery,* for the defendants Channing P. Harris et als., trustees.

MALTBIE, C. J.   The plaintiffs brought this action to quiet their title to certain lands which we shall refer to as the Sturges place and the dock property

and which were at one time owned by Horace Staples. Mr. Staples died in 1897 leaving a will executed in 1882 to which he had made several codicils. The last of these was executed in August, 1895. In it he made certain changes as regards the executors and trustees of his estate and then, except for this change, he republished and affirmed his will and the previous codicils. In the will he gave the proceeds of a life insurance policy upon the life of his son, which he owned, to his son's wife during her life; he gave the sum of $3000 to trustees to be paid to his son if they were satisfied that he proved himself thrifty in business; and he gave all the residue of his personal estate to the trustees upon certain conditions under which the son might become entitled to one-fourth thereof, with a gift over in the event that he did not become entitled to it, "to his male heirs-at-law bearing the name of Staples." In the thirteenth paragraph he gave to his son the use and improvement of the Sturges place during his life, at his death the property to go to the testator's grandson and to his heirs forever. In the fourteenth paragraph he gave the residue of his real estate, which included the dock property, to the trustees, one-half of the net income and profits to be paid to his son and grandson in equal shares during their joint lives and to the survivor during his life, with a provision that if at the decease of both the son and grandson there should be lawful issue male of either of them surviving and bearing the name of Staples the half of the residue of the real estate should go to such issue, to be divided among them if there were more than one, in such manner as intestate estates usually go.

In a codicil executed in 1891 he recited that his son had recently died and that by reason of this fact certain alterations and changes in his will had become

necessary. The codicil then proceeds: "Now therefor it is my will that each & every gift devise & bequest made to him & his widow Annie or either of them in my said last will testament & codicils thereto be & the same are hereby revoked, annulled & made inoperative & void; and that the use of my said property & estate so given to them or either of them in said last will & testament & the codicils thereto be & the same is hereby given to the children of my grandson William G. Staples during the term of their natural lives share & share alike, with remainder in fee to their children forever but in the event they die without issue who can inherit, then said property & estate shall go to & vest in my executors & trustees," for the uses and purposes of a school for which he had made provision in his will.

Mr. Staples left his grandson, aged thirty-eight, his only heir-at-law, his grandson's wife, aged thirty-six, and three great grandchildren, children of this son, viz: Horace, then eleven years old, Mary, then ten, and Helen, then one. All are living except the grandson. His grandson appealed from the admission of the will and codicils to probate, on the ground that the testator was incompetent and the will was the result of undue influence. A compromise agreement was entered into between the executors and trustees under the will and the grandson, both as an individual and as the duly appointed guardian of his three children, which was approved and authorized by the Court of Probate upon application to it. In this instrument it was agreed that certain provisions in the will should be held invalid, and accordingly the Superior Court entered a judgment in which the agreement was recited and in which these provisions were adjudged invalid, among them being the fourteenth paragraph. The compromise agreement referred to "The Sturges

place so called, the life use of which by the thirteenth clause of said will was given to William C. Staples [testator's son] and his heirs forever, and by the codicil of June 13, 1891, given to the children of William G. Staples [testator's grandson] during life, with a remainder in fee to their children forever," and provided that the remainder interest therein for the benefit of the school, in the event that the great grandchildren should die without issue, should be declared invalid. In accordance with the terms of the agreement, the executors and trustees under the will executed a quitclaim deed of both the Sturges place and the dock property to the children of the grandson. The Court of Probate thereafter issued a certificate of devise in which it was stated that the Sturges place was specifically devised to the children of the grandson during the term of their natural lives share and share alike, with a remainder in fee to their children forever and in which, also, it was stated that certain real estate not involved in this controversy had been specifically devised to the grandson. Thereafter, in July, 1900, the grandson as the duly appointed guardian of the estates of his three children, under an order of sale made by the Court of Probate, executed a deed of the Sturges place to the plaintiffs' predecessor in title. Since the execution of that deed, the property has been in the exclusive possession of the plaintiffs or their predecessor in title and no adverse claim to it has been made by anyone, until the claims of the defendants advanced in this action.

In July, 1900, the Court of Probate made an ascertainment of the heirs and ordered the distribution to the grandson of certain real estate of the testator which was considered to be intestate and which included the dock property. The grandson had previously quitclaimed the property to his children, re-

serving to himself a life use thereof. Subsequently he executed a warranty deed of the property to the plaintiffs' predecessor in title purporting to transfer it in fee. On March 9, 1936, the grandson and his three children executed quitclaim deeds of the property to the plaintiffs' predecessor in title. Since 1902 the plaintiffs or their predecessors in title have had open and exclusive possession of the dock property and no demand has been made upon them for any interest therein until the claims of the defendants in this action.

The grandson has died, no administration has been taken out upon his estate, and his three children are his only heirs. Any interest in the real estate which he had and which did not terminate at his death is now vested in them. *Perkins* v. *August*, 109 Conn. 452, 456, 146 Atl. 831. The only persons who could claim any interest in either the Sturges place or the dock property which was derived from Horace Staples are the children of the grandson, and their children. As regards the Sturges place, the sale of it by the grandson as guardian of the estate of his children conveyed at least any interest they had by reason of a life use in them created in the codicil, and the only claim they could assert would be as heirs of the grandson, to the remainder interest in it given to him in the thirteenth paragraph of the will. As regards the dock property, the grandson during his life, and his children, then of age, quitclaimed all their interest in the property to the plaintiffs' predecessors in title, and the children have no claim to it. The grandchildren of the grandson do claim an interest in both properties by reason of the provisions of the codicil. The only possible outstanding interests are then, that of the grandson's children to the Sturges place under the thirteenth

paragraph of the will, and that of his grandchildren in both properties under the codicil.

The plaintiffs have questioned before us whether the provisions we have quoted from the codicil made after the death of the son had the effect of revoking not only the portion of the thirteenth paragraph which gave the life use of the property to the son, but also by implication the gift of the remainder to the grandson and of substituting for the latter a gift in remainder after the life use of the grandson's children to their children. If the codicil did not make this substitution, then the remainder interest in the Sturges place was vested in the grandson and has not been formally conveyed to the plaintiffs or their predecessors in title, his deed of the property being only as guardian of the estate of his children. If, on the other hand, the codicil did substitute for the remainder gift to the grandson one to his children's children after the life use given to his children, this interest has not been conveyed to the plaintiffs or their predecessors in title, for that deed could not have the effect of conveying the remainder interest vested in their children.

As regards any interest of the children of the grandson in the Sturges place, they were made defendants in this action and with their children filed a joint answer and claim, but that went no farther than to assert the right of their children by reason of the provision for the gift over to them in the codicil, and made no claim in their own behalf to any interest they had as heirs of the testator's grandson. Upon the stipulated facts it would seem likely that the plaintiffs could claim title to this property against the children by adverse possession, for they have been in open and exclusive possession of it under a deed purporting to convey title for some forty years, but the question whether they have acquired such title is not before

us, even if it could be presented upon this reservation. In the compromise agreement to which the grandson was a party and in accordance with which the subsequent administration of the estate was carried on, it is recited in effect that the codicil from which we have quoted substituted for the gift of the remainder interest in this property to the grandson one to the children of his children and in the certificate of devise subsequently entered the property is so distributed, and in the same instrument other real estate is distributed to him. If the children of his children by reason of the codicil had an interest in the property, the agreement to which they were not parties even by representation could not affect that interest, but it is difficult to see how the grandson could set up any claim adverse to the disposition of the property recognized therein and subsequently as effectively created by the codicil, or how his children, as his heirs, could have any greater rights than he would have. He would be estopped to make any such claim and that estoppel would be binding upon them, who can claim title only under him. *Williams* v. *Payne,* 169 U. S. 55, 75, 18 Sup. Ct. 279; 19 Am. Jur. 811. But however that may be, no claim to the Sturges place is advanced by the grandson's children, who are parties to these proceedings, and there is no occasion further to consider the question whether upon the face of the papers they might have a possible interest.

The children of the grandson's children could have no interest in either property except under the provisions of the codicil and the question presented, and the only question argued by them and by their parents in their behalf, is whether the gift over to them made therein is invalid as constituting a perpetuity. While the original will and all codicils except the last were executed while our Statute of Perpetuities was in force,

the last codicil was executed after it was repealed and it republished and affirmed the will and previous codicils. The question of validity of the remainder interest is governed, then, not by our former statute but by the common law rule against perpetuities. *Morse* v. *Ward*, 92 Conn. 408, 410, 103 Atl. 119.

It is apparent that the testator did not intend that the life uses created should continue only for the period of the joint lives of the children of his grandson, for, if that were his intent and one should die, the others would lose all their interests under the will, and the property would go in fee to the children of any of them, whether the survivors then had children or not; the life uses were evidently intended to continue so long as any of the grandson's children were alive. If the gift of the life use to "the children of my grandson" was a class gift, it would open to let in any children who might be born to him after the death of the testator; *Shepard* v. *Union & New Haven Trust Co.*, 106 Conn. 627, 635, 138 Atl. 809; the class who would take the remainder might not be determinable until the death of a child born some years after the death of the testator; and this would violate the rule against perpetuities. The situation presented is stated in *Bridgeport-City Trust Co.* v. *Alling*, 125 Conn. 599, 7 Atl. (2d) 833, where we were considering a trust agreement in which it was provided that the income of a fund should be paid to the settlor's three daughters or the survivor or survivors of them for life and after their death to such of the settlor's grandchildren as survived his daughters, with provision for the distribution of the principal at the death of the last survivor of his grandchildren to his lineal descendants. We said (p. 601): "If by the direction to distribute the income 'unto as many of my grandchildren as shall survive my said daughters' the testator intended to in-

clude grandchildren born after the trust agreement took effect, then the gift of the principal when 'all of said grandchildren shall be deceased' to such of his lineal descendants as might then be surviving would make it possible that a lineal descendant not born within the period of a life or lives in being at the time the trust was created and twenty-one years thereafter might be within the terms of the gift and so it would come within the rule against perpetuities. *Shepard* v. *Union & New Haven Trust Co.*, 106 Conn. 627, 635, 138 Atl. 809. On the other hand, if Mr. Alling meant, by his use of the words 'my grandchildren,' the grandchildren then living, the gift of the principal would necessarily vest at the death of the longest surviving of the three and no invalidity would attach to the various gifts. *Union & New Haven Trust Co.* v. *Sherwood,* 110 Conn. 150, 159, 147 Atl. 526."

In the *Bridgeport-City Trust Co.* case (p. 601) we reiterated the established principle that a construction of a will which would make void a devise or bequest as an illegal perpetuity is to be avoided if the language used is fairly open to an interpretation which would make the gift valid; and we found in the terms of the instrument before us and certain extraneous circumstances a sufficient indication that the settlor used the word "grandchildren" as referring to persons answering that description when the trust agreement took effect. We did not hold that where a gift is made to grandchildren, or a group similarly designated, and nothing in the will or extrinsic circumstances indicates that he is referring to those within the class living when the gift takes effect, we construe the general words as applying only to them. Gifts to a group designated as children, grandchildren and the like have been so uniformly construed by us as made to a class which opens to let in after-born members that the

words have acquired a definite significance. Without attempting to cite all the many cases where this has been held to be so, we refer to *Norton* v. *Mortensen,* 88 Conn. 28, 89 Atl. 882, and the *Bridgeport-City Trust Co.* case, supra, and the cases referred to in them. We cannot, merely to avoid the application of the rule against perpetuities, give to such expressions a different meaning, and it is only where there is a basis upon which we can find an actual intent to use the words in a narrower sense that we can so interpret them. *Warren* v. *Duval,* 124 Conn. 448, 453, 200 Atl. 804.

In the will before us, such indications as there are point to the use of the word "children" of testator's grandson in its usual significance of a class gift opening to let in after-born children rather than the contrary. His grandson and his wife were of such an age that he might not unreasonably anticipate that other children would be born to them; in fact one was born after he had executed the codicils and about a year before he died. In the creation of the remainder interest he again used the word "children," although the children of his grandson then had none, and he coupled with it a provision that if the children of the children of his grandson died "without issue" there was a gift over, thus using in this clause, "children" and "issue" as synonomous. As he here used the word "children" as a class designation, there is a strong presumption that he used the same word with a like significance in the clause preceding. *Beardsley* v. *Johnson,* 105 Conn. 98, 107, 134 Atl. 530. As the class designated in the codicil to take the remainder interest might not be determinable until after the period allowed by the rule against perpetuities, the gift to them is void and they have no valid claim to either property.

There is no need to answer in detail the numerous and rather complicated questions propounded to us. The Superior Court is advised that upon the facts stated in the reservation none of the defendants have any interest in either the Sturges place or the dock property.

No costs will be taxed to any party in this court.

In this opinion the other judges concurred.