CONNECTICUT BANK AND TRUST COMPANY v. SETH
O. L. BRODY, EXECUTOR (ESTATE OF MARJORIE
R. S. TRUMBULL), ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued January 6—decision released April 10—decision withdrawn
sua sponte April 18—substitute decision released April 21, 1978

*Joel M. Ellis,* with whom, on the brief, was *James J. Kennelly,* for the plaintiff.

*Susan M. Alexander* and *William J. Britt,* for the named defendant et al.

*Edwin G. Hebb, Jr.,* with whom, on the brief, was *Alan R. Baker,* for the defendants Ann Deming et al.

*Wesley W. Horton,* with whom were *Clifton A. Leonhardt,* and, on the brief, *William R. Moller* and *Michael S. Schenker,* for the defendants Roberts T. Skinner et al.

*Merriam Davis,* with whom, on the brief, was *Thomas J. O'Malley,* for the defendant Marjorie R. S. Stevens.

HOUSE, C. J. This action was brought in the Superior Court in Hartford County by the plaintiff, successor trustee of a trust created by the will of William C. Skinner, seeking a decree advising the trustee as to its rights, powers and authority in connection with the administration of that trust. The appearing and nondefaulted parties, pursuant to the provisions of §§ 738 and 739 of the Practice Book, joined in a stipulation of facts and a request that the Superior Court reserve the action for the advice of this court. The court granted the request and reserved the case for the advice of this court with respect to eleven specific questions.

The parties properly stipulated to all the relevant facts, but it is unnecessary for the purposes of this opinion to recite them in full detail. A summary will suffice: William C. Skinner, to whom we will refer as the testator, was a resident of Hartford. He executed a will on August 6, 1920, and died, a widower, on March 8, 1922, leaving a large estate.

His will was duly presented for probate to the Probate Court for the district of Hartford and, on March 18, 1922, the will was proved and approved by that court. On September 26, 1927, a final administration account on the estate was filed and accepted, and the then Phoenix State Bank and Trust Company qualified as trustee of a testamentary trust created by article fourteenth of the will. The plaintiff trust company is successor trustee of that trust, and the principal of the trust consists entirely of personalty which is located within the state.

Article fourteenth of the will, in its entirety, provided: "Fourteenth: All the rest and residue of my property of every kind and nature, and wheresoever situated, I divide into three equal parts, and one of said parts I do hereby give, devise and bequeath to the Phoenix National Bank of Hartford, Connecticut, in trust, to hold the same for the use and benefit of my children, my grandchildren and my great grandchildren; and I hereby direct said Bank as Trustee to pay the income from said one-third of my residuary estate equally to my three children, share and share alike, during their lives and the life of each of them. Upon the decease of my last surviving child, it is my will that said Bank as Trustee should pay the entire income of said trust fund to my grand-children, share and share alike, during the term of the lives of my several grand-children. If either of my children should die leaving issue him or her surviving, it is my will that the issue of such deceased child should take that portion of the income which would have gone to the parent if living, until my last surviving child shall have deceased, and upon the happening of that event, it is my will that the entire income of said

trust estate shall be divided equally between my grand-children, share and share alike. Upon the death of my last surviving grandchild, it is my will that said trust should terminate, and said trust fund then remaining should be divided equally per capita among my great grand-children. The remaining two-thirds of said residuum I do hereby give, devise and bequeath to my children, to be divided between them, share and share alike, to them and their heirs and assigns forever."

It will be noted that the trust res consists of one-third of the residue of the testator's estate. During the life of his three children, the income was to be paid equally to them, share and share alike, the issue of any child dying taking per stirpes the share that the parent would have taken if living, until the last surviving child of the testator died. Upon the death of the testator's last surviving child, the entire income of the trust was to be paid, share and share alike, to the testator's grandchildren for the term of the lives of the grandchildren and upon the death of the last surviving grandchild the trust should terminate and the trust fund then remaining should be divided equally per capita among the testator's great-grandchildren.

On the death of the testator in 1922, he was survived by his three children: Roberts K. Skinner, born in 1880; Marjorie R. S. Trumbull, born in 1881; and William C. Skinner, Jr., born in 1888. All three of them have since died.

The testator was also survived by five grandchildren, four of whom are still living. One grandchild, Roberts K. Skinner, Jr., hereinafter referred to as Roberts, Jr., died in 1973 and is survived by three children.

Subsequent to the death of the testator, twelve great-grandchildren were born, including the three children of his now deceased grandson, Roberts, Jr. At the present time, all of these grandchildren and great-grandchildren are living, with the exception of the grandson, Roberts, Jr. Upon his death on November 6, 1973, questions arose as to the proper disposition of the one-fifth of the trust income which, until his death, was being paid to him under the provisions of the trust as a member of the class of grandchildren. The trust contains no express provision as to the disposition of the income of the trust payable to a member of the class of grandchildren in the event of the death of a member prior to the time fixed for the termination of the trust. The trust only provides that upon the death of the last surviving grandchild, that is, after the expiration of the second set of life estates in favor of the grandchildren, the great-grandchildren are to receive the trust fund then remaining equally, per capita. It is the questionable validity of the gift of the remainder interest to the testator's great-grandchildren and the gift of the trust income to his grandchildren as a class during their lives with no express provision as to the disposition of that income in the event of the death of a grandchild prior to the time fixed for the termination of the trust on the death of the last grandchild which have given rise to the present proceedings and the necessity for a resolution of the following questions which have been reserved for our advice:

(1) "In regard to the share of the income of the deceased beneficiary, Roberts K. Skinner, Jr., should that share be paid equally to the grandchildren of the testator who survive Roberts K. Skinner, Jr.?

(2) "In regard to the share of the income of the deceased beneficiary, Roberts K. Skinner, Jr., should that share be paid to the estate of said deceased beneficiary until the death of the last surviving grandchild of the testator?

(3) "In regard to the share of the income of the deceased beneficiary, Roberts K. Skinner, Jr., should that share be paid to the estate of the testator until the death of the last surviving grandchild of the testator?

(4) "In regard to the share of the income of the deceased beneficiary, Roberts K. Skinner, Jr., should that share be accumulated and on the termination of the trust for the grandchildren paid to the persons entitled to the principal of the trust estate?

(5) "In regard to the share of the income of the deceased beneficiary, Roberts K. Skinner, Jr., should that share be paid to Roberts K. Skinner, Jr.'s issue per capita until the death of the last surviving grandchild of the testator?

(6) "In regard to the share of the income of the deceased beneficiary, Roberts K. Skinner, Jr., should that share be paid to Roberts K. Skinner, Jr.'s issue per stirpes until the death of the last surviving grandchild of the testator?

(7) "In regard to the share of the income of the deceased beneficiary, Roberts K. Skinner, Jr., should that share be paid to the testator's great-grandchildren, per capita, until the death of the last surviving grandchild of the testator?

(8) "After the death of the last surviving grandchild of the testator, should the trust fund then remaining be divided equally, per capita, among the testator's great-grandchildren?

(9) "If the answer to (8) is in the affirmative, if a great-grandchild predeceases the last surviving grandchild of the testator, should the estate of such great-grandchild share equally in such trust fund with the great-grandchildren living after the death of the last surviving grandchild?

(10) "If the answer to (8) is in the negative, should the said trust fund at such time be paid to the estate of the testator to be distributed by it as intestate property?

(11) "If the answer to (8) is in the negative, should the said trust fund be now paid to the estate of the testator to be distributed by it as intestate property?"

These questions raise the following issues which have been briefed and argued by all the parties with commendable thoroughness: (1) Whether any provisions of the trust created by article fourteenth of the will of William C. Skinner violate the rule against perpetuities and are, therefore, invalid. (2) If any provision of the trust violates the rule against perpetuities, should the trust be terminated immediately or be allowed to continue until expiration of the second set of life estates, that is, until the death of the testator's last surviving grandchild? (3) If the entire trust is valid or if its provisions for the great-grandchildren violate the rule against perpetuities, but the trust is valid until the death of the testator's last surviving grandchild, which of four possible dispositions should be made of the share of the income of the deceased beneficiary, Roberts, Jr., the testator's grandchild? (a) Should it be paid to the estate of the deceased beneficiary? (b) Should it be paid to the surviving life beneficiaries? (c) Should it be accumulated and

on termination of the trust be paid to the persons entitled to the principal of the trust estate? (d) Should it be returned to the estate of the testator to be distributed as intestate property not disposed of by his will? (4) If the trust is valid, what disposition should be made of a great-grandchild's remainder interest in the event the great-grandchild predeceases the last surviving grandchild? See 2 Scott, Trusts (3d Ed.) § 143.

The rule against perpetuities is deeply rooted in our common law and much has been written about its history and development. See 61 Am. Jur. 2d, Perpetuities and Restraints on Alienation, § 6; Restatement, 4 Property, pt. 1; 6 American Law of Property, pt. 24; 2 Scott, op. cit. § 124.1; Leach, "Perpetuities in a Nutshell," 51 Harv. L. Rev. 638. "The rule against perpetuities, generally stated, is that 'no interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest' or (as the case may be) twenty-one years and the period of gestation. Gray, [The Rule Against] Perpetuities (3d Ed.) § 201; Cleaveland, Hewitt & Clark, Connecticut Probate Law and Practice, p. 631; *Bates* v. *Spooner,* 75 Conn. 501, 507, . . . [54] Atl. 305. Its usual application and effect is to prohibit or invalidate attempts to create by limitation, whether executory or by way of remainder, future interests or estates the vesting of which is postponed beyond the prescribed period." *Wilbur* v. *Portland Trust Co.,* 121 Conn. 535, 537, 186 A. 499.

The rule against perpetuities was early recognized as a principle of our common law and has so continued, supplemented by a specific statute against perpetuities which was in effect from 1784 until

repealed by Public Acts of 1895, chapter 249. See *Lewis Oyster Co.* v. *West,* 93 Conn. 518, 526, 107 A. 138, and cases therein cited; *Bates* v. *Spooner,* supra; and note by Chief Justice Maltbie in *Warren* v. *Duval,* 124 Conn. 448, 456, 200 A. 804.

The underlying and fundamental purpose of the rule is founded on the public policy in favor of free alienability of property and against restricting its marketability over long periods of time by restraints on its alienation. The rule "is not a rule of construction but a positive mandate of law to be obeyed irrespective of the question of intention, and is to be applied even if the accomplishment of the expressed intent of the testator is made impossible. . . . The proper procedure is to determine the true construction of the will or deed involved, just as if there was no such thing in existence as the rule against perpetuities, and then to apply the rule rigorously, in complete disregard of the wishes and intentions of the testator or grantor." 61 Am. Jur. 2d, op. cit. § 9.

Under the will of the testator in the present case, the testamentary scheme was for title in the residuary share to vest ultimately in his great-grandchildren after life estates in his children as a class and then in his grandchildren as a class.

With respect to the first estate—to the testator's own children—there is, of course, no problem as they were lives in being at the time of the testator's death and the creation of these life estates involves no problem with the rule against perpetuities.

The provisions for life estates to the testator's grandchildren with remainder over to great-grandchildren, however, very much involve the application of the rule and we conclude that the gift

to the great-grandchildren does violate the rule against perpetuities and is invalid. See, generally, annot., "Validity, under rule against perpetuities, of gift in remainder to creator's great-grandchildren, following successive life estates to children and grandchildren," 18 A.L.R.2d 671. As that annotation notes, the determination of the validity of the gift of remainder to great-grandchildren, following successive life estates to children and grandchildren depends upon the particular facts of each case, but the "determining factor . . . is the character of the secondary life estate to grandchildren." Id., p. 673. The crucial question is whether the grandchildren can be regarded as "lives in being" as of the testator's death. If so, then they can be considered measuring lives for the purpose of applying the rule that an interest must vest, if at all, not later than *twenty-one years after some life in being at the creation of the interest.*

As will have been noted, the testator provided that upon the death of his last surviving child the trustee was to "pay the entire income of . . . [the] trust fund to my grand-children, share and share alike, during the term of the lives of my several grand-children" and that "[u]pon the death of my last surviving grandchild, it is my will that said trust should terminate, and said trust fund then remaining should be divided equally per capita among my great grand-children." In the case of each generation, the gift was to a class "grand-children" and "great grand-children" and in the case of the grandchildren, unlike the testator's provision for survivorship among his own children, he made no express provision for any alternative distribution in the event of the death of a grandchild "during the term of the lives of my several grand-

children." The conclusion is inescapable that the gifts were in each instance class gifts and the testator intended to designate as his beneficiaries in each instance a group capable of future change in number rather than specific individuals. See Restatement, 4 Property § 279. Unlike the circumstances in *Beers* v. *Narramore,* 61 Conn. 13, 22 A. 1061, and *Willis* v. *Hendry,* 127 Conn. 653, 20 A.2d 375, it cannot be found that the testator was referring to particular persons rather than classes of persons.

As the parties stipulated, at the time of his death the testator was survived by three children and five grandchildren. Until the death of all of his children, there remained the possibility that another grandchild would be born. The law recognizes such an event as among the possibilities. " 'For the purpose of applying the rule against perpetuities, both men and women are considered capable of having issue so long as they live.' *Jee* v. *Audley,* 1 Cox Ch. 324; *In re Sayer's Trusts,* L.R. 6 Eq. 318, 319; 71 Law Times, 186; Gray on Perpetuities, §§ 215, 376. The law looks forward from the time the limitation is made to see what may be, not backward to see what has been. It regards the possible, not the actual. *Rand* v. *Butler,* 48 Conn. 293; *Tingier* v. *Chamberlin,* 71 id. 466; *Thomas* v. *Gregg,* 76 Md. 169." *White* v. *Allen,* 76 Conn. 185, 189, 56 A. 519. In Connecticut, the rule as stated in the *White* case has long been observed. "The presumption that the possibility of issue is never extinct so long as a person lives is settled law in this country as it pertains to the validity of titles and the distribution of property. [Citations omitted.]" *Willimantic Investors, Inc.* v. *Covell,* 147 Conn. 34, 39, 156 A.2d 473; Restatement, 4 Property § 377.

Applying these principles to the present case, it is apparent that the gift to the grandchildren was a gift to a class which at the time of the testator's death was subject to being opened to let in members born after the death of the testator. "Gifts to a group designated as children, grandchildren and the like have been so uniformly construed by us as made to a class which opens to let in after-born members that the words have acquired a definite significance." *Westport Paper-Board Co.* v. *Staples,* 127 Conn. 115, 124, 15 A.2d 1; *Hill* v. *Birmingham,* 131 Conn. 174, 177–78, 38 A.2d 604. It follows that since it was possible that another grandchild of the testator might be born at some undetermined time after his death and thus become a member of the grandchildren class of beneficiaries, then the grandchildren cannot be regarded as "lives in being" for the purpose of applying the rule. It was the *children* of the testator who were the measuring lives and since a great-grandchild could have been born more than twenty-one years after the death of the children, the provision for the great-grandchildren violated the rule against perpetuities. In addition to the *Staples* case, see also *Norton* v. *Mortensen,* 88 Conn. 28, 89 A. 882; Restatement, 4 Property §§ 371, 383; 2 Scott, Trusts (3d Ed.) § 120; Simes, Handbook on the Law of Future Interests § 112; annot., 18 A.L.R.2d, op. cit., 671, 676; Leach, op. cit., 51 Harv. L. Rev. 638, 648.

We have not overlooked the existence in some jurisdictions of the so-called "wait and see" or "second look" doctrine pursuant to which a gift, which would be void under the certainty-of-vesting requirement of the common-law rule against perpetuities, may be validated by the occurrence of events which happen within the prescribed period. See

annot., "Perpetuities—Rule Against," 20 A.L.R.3d 1094; 61 Am. Jur. 2d, Perpetuities and Restraints on Alienation, § 26; Discussion in Tentative Draft No. 1, "Restatement of the Law Second, Property," Division I, pt. 1 and appendix (March 15, 1978). This is not the common-law rule in Connecticut. As we have noted, this court stated in *White* v. *Allen,* 76 Conn. 185, 189, 56 A. 519, that "[t]he law looks forward from the time the limitation is made to see what may be, not backward to see what has been. It regards the possible, not the actual." In 1955, the General Assembly adopted by statute the principles of the "second look" doctrine by what is now § 45-95 of the General Statutes,[1] but at the same time provided by what is now § 45-99 that the doctrine "shall apply only to inter vivos instruments and wills taking effect after October 1, 1955." This restriction is in accord with the well-established policy of giving retrospective applications to statutes "only when the mandate of the legislature [to do so] is imperative." *Michaud* v. *Fitzryk,* 148 Conn. 447, 449, 171 A.2d 397. In this instance, the mandate of the legislature is to refrain from retrospective applications and the statutory "second look" doctrine is not applicable to the will of the testator which took effect in 1922.

Having concluded that the remainder interest in the great-grandchildren is void under the rule, we

---

[1] "[General Statutes] Sec. 45-95. RULE AGAINST PERPETUITIES. 'SECOND LOOK' DOCTRINE. In applying the rule against perpetuities to an interest in real or personal property limited to take effect at or after the termination of one or more life estates in, or lives of, persons in being when the period of said rule commences to run, the validity of the interest shall be determined on the basis of facts existing at the termination of such one or more life estates or lives. For the purpose of this section, an interest which must terminate not later than the death of one or more persons is a life estate although it may terminate at an earlier time."

must determine whether the life estate in the grandchildren is so inextricably intertwined with the void remainder that it too must fail. Such a determination can only be made by looking to the intent of the testator to ascertain the function of the life estate in the general testamentary scheme. See Restatement, 4 Property § 402; annots., 28 A.L.R. 375; 75 A.L.R. 124; 168 A.L.R. 321, "Prior estate as affected by remainder void for remoteness."

Although, in general, an effort will be made to preserve a life estate even when it is followed by a void remainder; annot., 28 A.L.R. 375, 400; this can be accomplished only when the testator's primary intention "is not frustrated by cutting out the bad part." *Russell* v. *Hartley*, 83 Conn. 654, 659, 78 A. 320. "If the leading and primary object was to accumulate a fund for illegal distribution; or if the trusts were strictly subservient or auxiliary to such a distribution so as to be themselves tainted with the illegality; or if they are so connected therewith that they cannot be separated and carried into effect without involving consequences substantially and materially different from what the testator intended, then they too must fall with the illegal distribution." *Andrews* v. *Rice*, 53 Conn. 566, 571, 5 A. 823; *Leake* v. *Watson*, 60 Conn. 498, 515–16, 21 A. 1075.

In the case before us, the provision for the benefit of the grandchildren appears to serve no function other than to preserve a portion of the testator's estate intact for ultimate distribution to his great-grandchildren. There is no indication that a primary purpose of the life estate in the grandchildren was to see that they were comfortably provided for during their lifetimes, as might be inferred were there a provision for invasion of the corpus of the

trust. See *Russell* v. *Hartley,* supra; *Leake* v. *Watson,* supra. Nor is there evidence that an underlying purpose was to preclude the possibility that the spouse of a grandchild might gain control of a portion of the testator's estate. See *Andrews* v. *Rice,* supra. Thus, the only apparent purpose of the life estates to the grandchildren was to postpone the distribution to the great-grandchildren. Because we have found that the provision for postponed distribution to the great-grandchildren violates the rule against perpetuities, the provision for the grandchildren, which is clearly subservient or auxiliary to the disposition of the remainder, must fail as well.

It is also significant to note that the will of the testator does not indicate any intention that each of his grandchildren should have a separate life estate in a separate share and that each such separate share should vest separately at the death of such grandchild in the issue of that grandchild. Rather, the entire corpus of the trust was to be held first for the benefit of all the testator's children for their lives, and on the death of the last survivor of them the same corpus was to be held for the benefit of his grandchildren as a class until the last of them should die at which time the same undivided corpus should, as a remainder, vest in his great-grandchildren per capita. We conclude, as did the court in *North Carolina National Bank* v. *Norris,* 21 N.C. App. 178, 203 S.E.2d 657, in similar circumstances, that the doctrine of separability is not applicable.

Before answering the specific questions reserved by the Superior Court, it is pertinent to note the existence of one more well-settled legal principle.

Since the testator's attempted gifts to his grand-children and great-grandchildren must fail and these gifts were from a portion of the residue of his estate and the will made no other provision for distribution, the subject property must pass as intestate property of the testator. *Bronson* v. *Pinney,* 130 Conn. 262, 270, 33 A.2d 322; *Shannon* v. *Eno,* 120 Conn. 77, 93, 179 A. 479; *Wilson* v. *D'Atro,* 109 Conn. 563, 569, 145 A. 161; *Daboll* v. *Daboll,* 101 Conn. 142, 146, 125 A. 253; 80 Am. Jur. 2d, Wills, § 1695; Restatement, 4 Property § 403.

With full appreciation of the fact that under the circumstances our answers to the questions reserved for our advice may not be fully dispositive of the proceedings in the Superior Court, but being limited by the stipulated facts submitted to us, we answer the specific questions reserved for our advice as follows:

As to questions 1 through 8 and question 10, the answer is "no." In view of our negative answer to question 8, question 9 is not pertinent. The answer to question 11 is "yes."

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.