TEXACO REFINING AND MARKETING, INC. *v.*
JACK SAMOWITZ ET AL.
(13833)

PETERS, C. J., HEALEY, SHEA, GLASS and HULL, Js.

Argued January 3—decision released February 13, 1990

*Walter R. Hampton, Jr.,* with whom were *Donald L. Mackie* and, on the brief, *Lawrence H. Lissitzyn,* for the appellants (defendants).

*Jerome A. Mayer,* with whom was *Kim E. Nolan,* for the appellee (plaintiff).

PETERS, C. J. This appeal concerns the validity, under General Statutes § 47-33a and the common law rule against perpetuities, of an option to purchase real property contained in a long-term commercial lease. The named plaintiff, Texaco Refining and Marketing, Inc.,[1] brought an action for specific performance of an

---

[1] During the pendency of this action, the named plaintiff assigned its interest in the underlying lease and this action to Star Enterprise, which was

option contract against the defendants, Jack Samowitz, Alex Klein, Sheila Klein, Gloria Walkoff and Marilyn Moss, as successors in interest to the lessor of a lease executed and recorded in 1964. The trial court rendered judgment for the plaintiff, and the defendants have appealed. We transferred their appeal here in accordance with Practice Book § 4023. We find no reversible error.

The trial court relied on a stipulation between the parties for its finding of facts. On June 3, 1964, the named plaintiff and Kay Realty Corporation, the predecessor in interest of the defendants,[2] executed a lease for property in Southington. The term of the leasehold was fifteen years, subject to renewal by the lessee, the plaintiff, for three additional five year periods. The plaintiff exercised two of these options for renewal.[3]

The provision of the lease at issue in this appeal granted the plaintiff "the exclusive right, at lessee's option, to purchase the demised premises . . . at any time during the term of this lease or an extension or renewal thereof, from and after the 14th year of the initial term for the sum of $125,000." On August 14, 1987, during the second renewal period under the lease, the plaintiff gave notification, by certified mail, of its exercise of its option to purchase. When the defend-

formally substituted as the plaintiff on February 24, 1989. Because the pleadings in the trial court and the trial court judgment continue to refer to the named plaintiff, we shall do likewise.

[2] Kay Realty Corporation in 1967 transferred its title to the property by warranty deed to Sam Samowitz and the defendants Alex Klein and Jack Samowitz. In 1969, Sam Samowitz conveyed his interest, by quitclaim deed, to the defendants Jack Samowitz, Gloria Walkoff and Marilyn Moss. In 1980, the defendant Alex Klein conveyed his interest, by quitclaim deed, to the defendants Alex Klein and Sheila Klein. These conveyances were all recorded in the Southington land records. None of the defendants claims to be a good faith purchaser without notice of the plaintiff's lease.

[3] During the second renewal term, the parties modified some of the terms of the lease with respect to matters not presently at issue.

ants refused to transfer the property, the plaintiff brought this action, on December 30, 1987, for a judicial order of specific performance.

The trial court found that the plaintiff had demonstrated that it was ready, willing and able to perform its obligations under the contract, and that the option contained in its lease was supported by consideration. Noting that the terms of the lease had originally been negotiated by two corporations bargaining at arm's length, the court concluded that the option was enforceable. The court expressly considered and rejected both the statutory and the common law defenses that the defendants reassert in this appeal. Although we do not necessarily subscribe to the trial court's reasoning, we concur in its judgment on alternate grounds. *Bernstein* v. *Nemeyer,* 213 Conn. 665, 669, 570 A.2d 164 (1990); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978).

I

The defendants base their statutory challenge to the timeliness of the plaintiff's exercise of its option on General Statutes § 47-33a (a). That subsection provides: "No interest in real property existing under an executory agreement for the sale of real property or for the sale of an interest in real property or under an option to purchase real property shall survive longer than one year after the date provided in the agreement for the performance of it or, if the date is not so provided, longer than eighteen months after the date on which the agreement was executed, unless the interest is extended as provided herein or unless action is commenced within the period to enforce the agreement and notice of lis pendens is filed as directed by section 52-325."[4]

---

[4] The remainder of General Statutes § 47-33a currently provides: "(b) The interest may be extended only by reexecution of the written agreement or by execution of a new witten agreement, provided the agreement,

The defendants construe § 47-33a (a) as a statute of limitations under which the plaintiff's option to purchase did not "survive" to December 30, 1987, the date when the plaintiff brought its action for specific performance. Their principal argument is that the option to purchase contained in the June 3, 1964 lease provided no date for its exercise. They maintain, therefore, that § 47-33a (a) caused this option to expire in December, 1965, eighteen months after its execution. Alternatively, if some meaning must be assigned to the lease provision postponing the plaintiff's right to exercise its option for fourteen years after the execution of the lease, the defendants contend that, in order to comply with the mandate of § 47-33a (a), the plaintiff would have had to act within eighteen months of June 3, 1978.[5]

---

whether reexecuted or newly executed, shall be recorded as directed by sections 47-10 and 47-17. The period provided by this section shall not otherwise be extended, whether because of death, disability or absence from the state or for any other reason. Upon the expiration of an interest the title to property affected by the interest shall not thereafter be considered unmarketable because of the expired interest.

"(c) Nothing in this section shall be construed to limit or deny any legal or equitable rights a party may have under the agreement except the right to have the agreement specifically enforced."

This version of the statute reflects stylistic changes that were enacted in 1979. See Public Acts 1979, No. 79-602, § 125.

[5] The defendants also mount a third attack on the plaintiff's enforcement of its option by reason of an ambiguity in the stipulation of facts about the date on which the plaintiff exercised its option to purchase. Paragraph 9 of the stipulation states that the plaintiff gave notice of its action to the named defendant on November 6, 1985, while paragraph 10 refers to a similar notice given to the named defendant as well as to Sam Samowitz and the defendant Alex Klein on August 14, 1987. The defendants focus on the earlier date to argue that, even if General Statutes § 47-33a (a) is not triggered until the exercise of an option to purchase, the plaintiff's lawsuit was too late because it was not commenced within eighteen months of November 6, 1985.

The defendants' argument founders because of a lack of support, in the record, for its underlying premise of fact. The trial court found that the option had been effectively exercised in 1987, not in 1985. The defendants

The trial court rejected the defendants' claims, concluding that the lease agreement could be construed to avoid conflict with § 47-33a (a). Since the lease permitted the plaintiff to exercise its option at any time between June 3, 1978, and June 3, 1994, it specified dates for performance that invoked the provision of § 47-33a (a) that allowed an "interest in real property . . . [to] survive . . . one year after the date provided in the agreement for the performance of it . . . ." On that theory, the plaintiff was timely in filing its lawsuit on December 30, 1987. Any other construction of the lease, the court felt, would raise serious questions about the retroactive application of a 1965 statute to impose limitations on the enforceability of a 1964 agreement.[6] See *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 571, 440 A.2d 220 (1981).

The trial court's conclusions, and the defendants' arguments, appear to assume that, in extending § 47-33a (a) to encompass options for the purchase of real property, the legislature intended to regulate the time period in which a lessee may exercise an option contained in a long-term lease. The statute applies to an "interest in real property existing under an executory agreement for the sale of real property or for the sale of an interest in real property or under an option to purchase real property . . . ." The question, with respect to options in leases, is whether the legislature intended broadly to cover any "interest in real property . . . under an option to purchase" or intended

did not ask the trial court to articulate the basis for its finding of fact. Practice Book § 4051. In this court, the defendants have advanced no argument and made no showing that the trial court's finding was clearly erroneous. Practice Book § 4061. The defendants therefore cannot prevail on this contention.

[6] As the court noted, the legislature did not amend General Statutes § 47-33a (a) to include options until 1965. Public Acts, Spec. Sess., Feb., 1965, No. 401.

more narrowly to cover only an "interest in real property existing under an executory agreement . . . under an option to purchase . . . ." In other words, does the statute apply broadly as a constraint upon the exercise of an option from the moment that the option provision is incorporated into a lease agreement, or does it apply more narrowly as a constraint only upon the performance of the option once the lessee has exercised its right to convert the option into a binding executory agreement of purchase?

In the absence of useful guidance from the text of § 47-33a (a) or from its legislative history, we must infer the purpose the statute is intended to serve. *Quinnipiac Council, Boy Scouts of America, Inc.* v. *Commission on Human Rights & Opportunities,* 204 Conn. 287, 294–95, 528 A.2d 352 (1987). The plaintiff argues that, under the governing principles of statutory construction, the narrower reading of § 47-33a (a) is the more appropriate. We agree. The broader reading of § 47-33a (a) would require a fundamental restructuring of options in long-term leases. Lease agreements could no longer safely authorize a lessee, pursuant to an option clause, to determine whether and when it wished to convert from a leasehold to an ownership interest. Only options of extremely short duration or with specified dates for performance of the underlying contract of sale would continue to be enforceable without periodic renewals dependent upon the continuing consent of the lessor.[7] Although the legislature has the authority to impose draconian consequences on option contracts in commercial leases, we are unpersuaded that § 47-33a (a) manifests such an intention. "The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation

---

[7] Renewal of the option in accordance with General Statutes § 47-33a (b) would require periodic reexecution and rerecordation of the underlying lease. See footnote 4, supra.

of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is . . . reasonable." *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984); *State* v. *Campbell,* 180 Conn. 557, 563, 429 A.2d 960 (1980).

We therefore conclude that § 47-33a (a) had no applicability to the option clause in the plaintiff's lease agreement until August 14, 1987, when the plaintiff exercised its option to purchase. Only the plaintiff's exercise of its option created "an executory agreement for the sale of real property . . . under an option . . . ." Thereafter, § 47-33a (a) allowed the plaintiff eighteen months to enforce this agreement. The commencement of this action on December 30, 1987, complied with the statutory period of limitation. The defendants have, accordingly, failed to establish their statutory defense to specific performance.

## II

The defendants rely on the common law rule against perpetuities as their second argument for the unenforceability of the plaintiff's option to purchase their property. The rule against perpetuities states that "[n]o interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." J. Gray, The Rule Against Perpetuities (4th Ed. 1942) p. 191; *Connecticut Bank & Trust Co.* v. *Brody,* 174 Conn. 616, 623, 392 A.2d 445 (1978). The defendants maintain that the option in this case did not vest within the time span mandated by the rule. We disagree.

The trial court determined that the option in the lease agreement did not violate the rule against perpetuities by construing the lease agreement as a series of discrete undertakings, first for an initial fourteen year term, and thereafter for each renewal term. Because the option could be exercised only within one of these discrete terms, none of which exceeded twenty-one

years in length, the court held that the interest in the option would necessarily vest within the time period specified by the rule against perpetuities.

Whatever might be the merits of the trial court's construction of the lease agreement, we prefer to consider a more basic question: do options in long-term leases fall within the jurisdiction of the rule against perpetuities? Our precedents indicate that the rule applies to an unrestricted option to purchase real property; *Neustadt* v. *Pearce,* 145 Conn. 403, 405, 143 A.2d 437 (1958); *H. J. Lewis Oyster Co.* v. *West,* 93 Conn. 518, 530, 107 A. 138 (1919); but not to an option to renew the term of a real property lease. *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 124, 357 A.2d 910 (1975). We have not, however, previously considered the relationship between the rule against perpetuities and an option to purchase contained in a long-term commercial lease of real property.

The defendants have offered no reason of policy why we should extend the ambit of the rule against perpetuities to cover an option to purchase contained in a commercial lease. "The underlying and fundamental purpose of the rule is founded on the public policy in favor of free alienability of property and against restricting its marketability over long periods of time by restraints on its alienation." *Connecticut Bank & Trust Co.* v. *Brody,* supra, 624; 4 Restatement, Property (1944) pp. 2129–33. An option coupled with a long-term commercial lease is consistent with these policy objectives because it stimulates improvement of the property and thus renders it more rather than less marketable. 3 L. Simes & A. Smith, The Law of Future Interests (2d Ed. 1956) p. 162. Any extension of the rule against perpetuities would, furthermore, be inconsistent with the legislative adoption of the "second look" doctrine, pursuant to which an interest subject to the rule may be validated, contrary to the common law, by the occurrence of events subsequent to the cre-

ation of the interest. See General Statutes § 45-95; *Connecticut Bank & Trust Co.* v. *Brody,* supra, 627–28.

We therefore conclude that an option to purchase contained in a commercial lease, at least if the option must be exercised within the leasehold term, is valid without regard to the rule against perpetuities. This position is consistent with the weight of authority in the United States. See, e.g., *Dozier* v. *Troy Drive-in-Theatres,* 265 Ala. 93, 101–103, 89 So. 2d 537 (1956); *Cambridge Co.* v. *East Slope Investment Corporation,* 700 P.2d 537, 540 (Colo. 1985); *Wing, Inc.* v. *Arnold,* 107 So. 2d 765, 768–69 (Fla. App. 1959); *St. Regis Paper Co.* v. *Brown,* 247 Ga. 361, 363–64, 276 S.E.2d 24 (1981); *Keogh* v. *Peck,* 316 Ill. 318, 333–35, 147 N.E. 266 (1925); *Hollander* v. *Central Metal Co.,* 109 Md. 131, 157–61, 71 A. 442 (1908); *Quarto Mining Co.* v. *Litman,* 42 Ohio St. 2d 73, 78, 326 N.E.2d 676, cert. denied, 423 U.S. 866, 96 S. Ct. 128, 46 L. Ed. 2d 96 (1975); *Producers Oil Co.* v. *Gore,* 610 P.2d 772, 775 (Okla. 1980); *Hoover* v. *Ford's Prairie Coal Co.,* 145 Wash. 295, 306, 259 P. 1079 (1927); contra *First Huntington National Bank* v. *Gideon-Broh Realty Co.,* 139 W. Va. 130, 152–53, 79 S.E.2d 675 (1953). The commentators have, for a long time, unanimously supported what has become the majority view. See, e.g., E. Abbot, "Leases and the Rule against Perpetuities," 27 Yale L.J. 878, 885–89 (1918); 6 American Law of Property (A. Casner ed. 1952) § 24.57; A. Langeluttig, "Options to Purchase and the Rule against Perpetuities," 17 Va. L. Rev. 461, 464–71 (1931); 5A R. Powell, Real Property (1989) § 771 [2]; 4 Restatement, Property (1944) § 395; 3 L. Simes & A. Smith, supra, p. 162; 4A G. Thompson, Real Property (1979) p. 618. The plaintiff's option in this case was, therefore, enforceable.

There is no error.

In this opinion the other justices concurred.