SAMUEL P. MILAZZO *v.* BARRY S. SCHWARTZ ET AL.
(15579)

O'Connell, Foti and Hennessy, Js.

Argued December 5, 1996—officially released March 11, 1997

*Dana P. Lonergan*, for the appellants (defendants).

*Robert R. Petrucelli*, for the appellee (plaintiff).

FOTI, J. The plaintiff, Samuel Milazzo, sought judgment of strict foreclosure of two mortgages that he held on property of the defendants, Barry Schwartz and Creative Food and Beverage, Inc. On appeal, the defendants claim that the trial court improperly (1) concluded that the parties' oral agreement violated the statute of frauds, (2) concluded that the defendants were estopped from pursuing their special defenses and counterclaims against the plaintiff as a result of a previously entered stipulation, and (3) awarded interest to the plaintiff. We affirm the judgment of the trial court.

The plaintiff agreed to sell his meatpacking business, including the structure and real property known as 1013-1017 Housatonic Avenue and 1027 Housatonic Avenue in Bridgeport, to the defendants. The parties signed a purchase agreement dated August 3, 1989. The agreement, which was introduced at trial, set out a sales price of $450,000, $25,000 due upon signing, $225,000 due at closing, $100,000 due on or about March 1, 1991, and $100,000 due on or about September 1, 1994. The agreement refers to two $100,000 mortgage notes and a lease as schedules or exhibits. The lease set out the terms of a lease arrangement with Creative Food and Beverage, Inc., as landlord, and Samuel Milazzo, as tenant. The plaintiff was to pay the defendants a minimum of $2550 per month.[1] The parties were to sign the notes and lease at the closing, but they failed to do so.

The court took judicial notice of an earlier foreclosure action that the plaintiff had brought in 1991 concerning the same property and parties, *Milazzo* v.

---

[1] The lease provided for rent of $400 per month plus ten cents per pound of meat fabricated by and or for the tenant. The tenant guaranteed that he would fabricate at least 5000 pounds of meat per week yielding a minimum total monthly rental of $2550.

*Schwartz*, Superior Court, judicial district of Fairfield, Docket No. CVBR9109-01428. The defendants had filed essentially the same answer, special defenses and counterclaim in the prior matter as they did in this case. On March 18, 1992, the parties entered into a stipulation in the prior action.[2]

The stipulation provided that the defendants had four months from the date of the execution of mortgage and notes to pay $100,000. If the defendants failed to pay the sum, the plaintiff reserved the right to foreclose on the notes and mortgages due pursuant to the agreement.

The defendants did not make the $100,000 payment due pursuant to the stipulation. The plaintiff did not

---

[2] The stipulation, as stated on the record, provided: "It is hereby stipulated and agreed by and between the parties that the defendant, Barry Schwartz, individually and as president of Creative Foods and Beverage, Inc., will execute the mortgage and notes—mortgages and notes, originally agreed to be executed as per the contract dated 8/3/89, which is exhibit A, in this law suit. Said mortgages and notes will be prepared and recorded by Attorney Stanley Goldstein of our office within ten days of today's date. Upon execution and recording of said mortgage, notes and deeds, the plaintiff, Milazzo, will withdraw the instant action against Barry Schwartz, Creative Foods and Beverage, Inc and Dana Lonergan and the defendants Barry Schwartz and Creative Foods and Beverages, Inc., will withdraw the counterclaim against the plaintiff, Samuel Milazzo. Barry Schwartz and Creative Foods and Beverage, Inc. will seek to refinance the mortgage presently on 1013-1017 Housatonic Avenue, Bridgeport, and pay to the plaintiff the sum of one hundred thousand dollars in accordance with the notes and—the notes and mortgage . . . which was due 3/1/91. The defendants, Barry Schwartz and Creative Foods and Beverage, Inc., have four months from the date of the execution of the mortgage and notes—mortgage, notes and deeds, to pay said one hundred thousand dollars. If said one hundred thousand dollars is paid, by the defendants, to the plaintiff, Samuel Milazzo will convey by warranty deed, all of his right, title and interest in and to 1027 Housatonic Avenue, Bridgeport, to Creative Foods and Beverages, Inc. If it is not paid by the defendants within said four month period, Samuel Milazzo reserves the right and is hereby given the right by the defendants to foreclose the note and mortgage due 3/1/91 and the note and mortgage due 9/1/9—Did I say 9/1?—The note and mortgage due 3/1/91 and the note and mortgage due 9/1/94. Period."
Both parties accepted this agreement.

pay rent to the defendants after they told him that they could not make the payment due. The plaintiff then brought this foreclosure action. The trial court rendered judgment of strict foreclosure for the plaintiff and further determined that he was entitled to interest on the judgment. This appeal followed.

## I

We first address the defendants' claim that the trial court improperly ruled that they were estopped from pursuing their special defenses and counterclaim against the plaintiff.[3] At the outset, we note that the trial court never expressly addressed whether the defendants could pursue their special defenses. The trial court, however, considered and rejected the defendants' special defenses when it found that the lease agreement on which their special defenses were based was unenforceable. In view of the trial court's consideration of the substance of the defenses, we conclude that the trial court implicitly found that the defendants were not barred from pursuing their special defenses.

## II

Having so concluded, we now turn to the defendants' claim that the trial court improperly found that the lease agreement between the parties violated the statute of frauds. The defendants alleged in their special defenses

[3] We note that sometime prior to trial, the plaintiff filed for bankruptcy protection under Chapter 13 of the federal Bankruptcy Code. The filing of a bankruptcy petition creates an automatic stay against the commencement or continuation of all actions against the debtor that were, or could have been, filed against the debtor prior to the bankruptcy filing. 11 U.S.C. § 362. Here, the automatic bankruptcy stay did not prohibit the foreclosure action from proceeding because it was not an "action against the debtor." The counterclaim for breach of contract, however, was an action against the debtor and, in the absence of a specific order lifting the stay, should not have proceeded. We, therefore, regard the trial court's ruling insofar as it resolves the counterclaim as a nullity.

that the plaintiff initially breached the original purchase agreement between the parties by failing to pay rent under the subsidiary lease agreement. The trial court found no merit to this claim because it concluded that the lease violated the statute of frauds.

General Statutes § 52-550, Connecticut's codification of the statute of frauds, provides in relevant part: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party . . . to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . . ." Our Supreme Court, however, has set out an exception to the requirements of the statute of frauds: "We have held that acts on the part of the promisee may be sufficient to take a contract out of the statute if they are such as clearly refer to some contract in relation to the matter in dispute. . . . The doctrine of part performance arose from the necessity of preventing the statute against frauds from becoming an engine of fraud. . . . [T]he acts of part performance generally must be such as are done by the party seeking to enforce the contract . . . and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or the knowledge of the other party, and be such acts as alter the relations of the parties. . . . The acts must also be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute . . . ." (Citations omitted; internal quotation marks omitted.) *Ubysz* v. *DiPietro*, 185 Conn. 47, 54, 440 A.2d 830 (1981).

The defendants contend that the doctrine of part performance removes the transaction from the application of the statute of frauds. They claim that the transfer of the property and the plaintiff's payment of $3000 per

month to them from October, 1989, through November, 1990, constitutes performance of the contract sufficient to make the contract enforceable. The defendants claim that the trial court made factual findings consistent with a part performance, but that it erroneously concluded that the agreement was not enforceable as a matter of law.

In its memorandum of decision, the trial court found that "the unsigned lease violates the statute of frauds." The trial court did not explicitly address the issue of part performance. The parties dispute whether the transfer of possession and the payment of $3000 complied with the explicit terms of the lease agreement. Whether these actions constituted part performance was a factual determination to be made by the trial court. See *Fleet Bank, N.A.* v. *Galluzzo*, 33 Conn. App. 662, 666, 637 A.2d 803, cert. denied, 229 Conn. 910, 642 A.2d 1206 (1994). The trial court may have refused to invoke this equitable doctrine for a number of reasons. It may have determined, for example, that the defendants' actions could be naturally and reasonably accounted for in some way other than by the existence of a contract in relation to the subject matter in dispute. See *Union Trust Co.* v. *Jackson*, 42 Conn. App. 413, 418, 679 A.2d 421 (1996). Alternatively, it may have determined that the actions did not so change the defendants' position that a failure to enforce the agreement would work a fraud, injustice or hardship on them. See *Harmonie Club, Inc.* v. *Smirnow*, 106 Conn. 243, 248–49, 137 A. 769 (1927). We are unable to discern from the record before us the basis of the trial court's conclusion that the agreement violated the statute of frauds.

The defendants did not file a motion for articulation or rectification pursuant to Practice Book § 4061. It is their burden to furnish an adequate record for review. *Centerbank* v. *Gross*, 31 Conn. App. 38, 39, 622 A.2d

1066 (1993). We are therefore unable to review the defendants' claim that part performance made the agreement enforceable despite the fact that it violated the statute of frauds.

## III

The defendants claim that the trial court should not have awarded interest to the plaintiff. The defendants support their claim that an award of interest is improper because it was not their conduct, but the plaintiff's conduct, that was wrongful.

General Statutes § 37-1 provides: "(a) The compensation for forbearance of property loaned at a fixed valuation, or for money, shall, in the absence of any agreement to the contrary, be at the rate of eight per cent a year; and, in computing interest, three hundred and sixty days may be considered to be a year. (b) Unless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt." General Statutes § 37-3a provides for the legal rate of 10 percent.

"The allowance of prejudgment interest under § 37-3a is a matter within the discretion of the trial court. . . . This allowance turns on whether the detention of the money is or is not wrongful under the circumstances. . . ." (Citations omitted; internal quotation marks omitted.) *Patron* v. *Konover*, 35 Conn. App. 504, 517, 646 A.2d 901, cert. denied, 231 Conn. 929, 648 A.2d 879 (1994).

After a hearing on January 3, 1996, the trial court awarded prejudgment interest to the plaintiff. The defendants did not appear at the hearing and did not contest the award until this appeal. We conclude that the trial court properly determined that the defendants breached the agreement by not paying amounts due pursuant to the mortgage notes and, therefore, that the

detention of the money was wrongful. Accordingly, we conclude that the trial court did not abuse its discretion in its award of interest.

The judgment is affirmed.

In this opinion the other judges concurred.