RICHARD BATTALINO *v.* PHILIP S. VAN PATTEN
(AC 27426)

Bishop, Harper and Dupont, Js.

---

Argued January 4—officially released March 27, 2007

*Conrad Ost Seifert*, for the appellant (defendant).

*Richard F. Paladino*, for the appellee (plaintiff).

*Opinion*

DUPONT, J. The defendant, Philip S. Van Patten, appeals from the judgment granting the plaintiff, Richard Battalino, the equitable remedy of specific performance of an option to buy land and ordering a conveyance of the land to the plaintiff. The defendant claims that the court improperly granted the equitable relief because (1) that relief is prohibited by General

Statutes § 47-33a, (2) the underlying agreement violates General Statutes § 52-550 and (3) the court violated the parol evidence rule in interpreting the parties' written agreement.[1] We disagree and affirm the judgment of the trial court.

This case arises as the result of a dispute between two neighbors over the plaintiff's alleged right to purchase a piece of unimproved land of approximately one acre, situated between their respective homes. The plaintiff and the defendant executed and recorded in the Old Lyme land records a two part agreement, containing a lease and an option to purchase, dated April 10, 1989. The agreement was drafted by the defendant's attorney.

The agreement, in its first section, entitled "Lease Agreement," provided that the plaintiff would lease the property for four years, beginning on May 1, 1989, with a rental payment obligation of $796.33 per month. The agreement further provided that the lease agreement could be renewed for an additional four years on May 1, 1993, at the same rental rate, and again for an additional two years beginning on May 1, 1997, with rental payments of $730.96 per month.[2] The second section, entitled "Option to Purchase," provided that the plaintiff was given an option to purchase the property "[o]n or after May 1, 1993," if he complied with all of his obligations under the lease. The agreement, however, did not specify the length of time the option would remain in effect. The agreement also provided that the plaintiff would receive a monetary credit of $32,000 toward a purchase price of $80,000 if he chose to exercise his option on February 1, 1993. The agreement further provided that if the plaintiff exercised his option after May 1, 1993, he would "receive a further credit of

[1] Issues two and three will be discussed together in part II.

[2] The court found that the plaintiff has never occupied the land. Thus, from May 1, 1989, to the time of trial in early 2006, the plaintiff never exercised the usual benefit accorded lessees, namely, occupancy.

$666.66 . . . for each month after May 1, 1993, toward the purchase price of the premises." At the time of the execution of the lease and option agreement, the plaintiff paid the defendant $20,000, which the court stated the plaintiff failed to prove was a down payment on the option.[3]

In May, 1992, the plaintiff and the defendant agreed to reduce the plaintiff's monthly rental obligation to $500.[4] On November 26, 2003, the defendant sent a letter to the plaintiff, asking him to resume payments of $500 per month, stating a concern that the option right could be forfeited. On February 28, 2004, the defendant sent the plaintiff a signed letter memorializing an earlier oral agreement to extend the plaintiff's lease to March 31, 2004, for the consideration of $1000, including back rent of $500 for February, 2004, and $500 for March, 2004. The February letter indicated that the defendant believed that the plaintiff had an ongoing option to purchase the property. It specifically provided for the plaintiff to "discontinue" his option, should the plaintiff so desire.[5] The plaintiff did not discontinue his option,

---

[3] The plaintiff sought recovery of an alleged overpayment of the option's purchase price in a second count of his complaint, which sought damages in quantum meruit. The court did not find for the plaintiff on this count, and the plaintiff abandoned the claim on appeal. The defendant also abandoned, on appeal, the claim he made in a special defense that if specific performance were granted to the plaintiff, the plaintiff would be unjustly enriched by the increase in value of the property in the interval between the original execution of the lease and the option to purchase. In any event, in determining the equities in deciding whether to enforce a contract, fairness of the agreement is considered at the time of the execution of the contract, even though the property may become considerably more valuable at the time performance is due. See *Robert Lawrence Associates, Inc.* v. *Del Vecchio*, 178 Conn. 1, 19, 420 A.2d 1142 (1979).

[4] The parties also executed a written amendment to the contract in 1992. The court did not consider this amendment, however, because the parties were unable to produce the writing. Neither party on appeal claims the court should have considered this amendment.

[5] Both letters were full exhibits and were introduced by the plaintiff without objection by the defendant.

however, but instead exercised it, while still leasing the property, in March, 2004.[6] The defendant refused to sell the property, and the plaintiff brought suit against him in June, 2004, seeking the defendant's specific performance of the agreement. The defendant does not argue that the plaintiff failed to pay the reduced monthly payment of $500 in rent prior to his exercise of the option. The court held that the plaintiff validly exercised the option to purchase the land and that the monetary credits the plaintiff had accumulated pursuant to the agreement satisfied his obligation to pay the defendant $80,000 for the purchase of the property, and ordered the defendant to convey the land.[7] From this judgment, the defendant appeals.

The defendant claims that the court improperly awarded the plaintiff specific performance. Specific performance is an equitable remedy whereby courts may compel the performance of land sale contracts, and certain other contracts, pursuant to the principles of equity. See 12 A. Corbin, Contracts (2002) § 1142, pp. 194–201. "Every complaint asking for specific performance of a contract to convey real estate is addressed to the discretion of the court, and will not be granted unless the contract is made according to the requirements of law, and is fair, equitable, reasonable, certain, mutual, on good consideration, consistent with policy and free from fraud, surprise or mistake." *Hurd* v. *Hotchkiss*, 72 Conn. 472, 480, 45 A. 11 (1900); see

[6] The defendant states in his appellate brief that the plaintiff exercised his option in November, 2003. The court stated in its findings that the option was exercised in March, 2004, and the defendant does not argue that this finding of fact was clearly erroneous.

[7] The defendant claimed that the plaintiff paid $99,667.80 in monthly rental payments, and the plaintiff testified he paid the defendant $102,000. The precise figure is immaterial in the determination of this appeal. Furthermore, the court found that any sums paid by the plaintiff in excess of the $80,000 were attributable to the rental that gave him the exclusive right to occupy the property.

*State* v. *Lex Associates*, 248 Conn. 612, 617–21, 730 A.2d 38 (1999). Even when a valid contract is found, however, there is no right to specific performance, but rather "[t]he granting of specific performance of a contract to sell land is a remedy which rests in the broad discretion of the trial court depending on all of the facts and circumstances when viewed in light of the settled principles of equity." (Internal quotation marks omitted.) *Webster Trust* v. *Roly*, 261 Conn. 278, 284, 802 A.2d 795 (2002).

I

The defendant first claims that § 47-33a precluded the plaintiff from obtaining specific performance.[8] Section 47-33a (a) provides in relevant part: "No interest in real property existing under an executory agreement for the sale of real property or for the sale of an interest in real property or under an option to purchase real property shall survive longer than one year after the date provided in the agreement for the performance of it or, if the date is not so provided, longer than eighteen months after the date on which the agreement was executed . . . ." The defendant argues that the court misconstrued the statute when the court determined that the appropriate trigger date for the eighteen month period prescribed by the statute to bring an action for specific performance was the date that the plaintiff

---

[8] The defendant did not raise General Statutes § 47-33a as a special defense in his pleadings but raised it as a defense in his final argument to the trial court. The plaintiff claims on appeal that the issue should not be considered. The court granted the parties' request to allow them both to brief the issue prior to the court's ruling in its memorandum of decision. The plaintiff relies on *Sink* v. *Meadow Wood Country Estates, Inc.*, 18 Conn. App. 569, 580, 559 A.2d 725, cert. denied, 212 Conn. 809, 564 A.2d 1072 (1989). That case, however, is not applicable here because, unlike *Sink*, the issue in this case was raised in time for the court's consideration of it, and the plaintiff had an opportunity to rebut the defendant's argument as to the statute's applicability, despite the failure of the defendant to raise it as a special defense. We therefore consider the issue.

attempted to exercise the option.[9] The defendant primarily argues that the plaintiff's right to seek specific performance ended, pursuant to the statute, on May 1, 2000, one year after the final lease renewal period ended under the agreement.

At issue is the effectiveness and timeliness of the plaintiff's exercise of an option to purchase and whether § 47-33a (a) renders the option void. The statute does not apply to an option contained in a long-term lease until the option has been exercised. *Texaco Refining & Marketing, Inc.* v. *Samowitz*, 213 Conn. 676, 682–83, 570 A.2d 170 (1990). This is because an option contract is not an "interest . . . under an executory agreement"; (internal quotation marks omitted) id., 682; within the purview of the statute, until the option is exercised. Id. Thus, the optionee, pursuant to a contract that does not state a performance date, has eighteen months to seek the remedy of specific performance after exercising the option. Id., 683. Until the option is exercised, there is no executory agreement. Id. If the optionee had to exercise its option within eighteen months after the date on which the agreement was executed, if no date is provided for when the option expires, a draconian result would follow. Id., 682.

In *Texaco Refining & Marketing, Inc.*, as in the present case, the court was presented with a contract that contained both a lease and an option to purchase the land. Id., 678. The contract did not indicate a date before which the option would have to be exercised, as is also true here. The contract, further, did not provide how long after the option was exercised the parties had to perform. The defendants argued that the appropriate

---

[9] The defendant additionally argues that, whatever the specific trigger date, the plaintiff had only one year, and not eighteen months, to bring the action for specific performance. The court found that the agreement did not explicitly provide a performance date, however, and so the plaintiff had eighteen months pursuant to General Statutes § 47-33a.

date to begin calculating the eighteen month period in which the plaintiff could bring an action for specific performance was the date that the contract was created. Id., 680. That argument was rejected by our Supreme Court, and the plaintiff was allowed to bring its claim for specific performance some twenty-three years after the execution of the lease-option agreement but within eighteen months of the exercise of its option to buy land. Id., 678–79.

Here, the court found that the plaintiff exercised the option to purchase the disputed property in March, 2004. The agreement does not provide for a performance date to exercise the option or for the sale. There is no dispute that the plaintiff brought the action for specific performance within eighteen months of March, 2004. Therefore, on the basis of the precedent of *Texaco Refining & Marketing, Inc.* v. *Samowitz*, supra, 213 Conn. 678, the plaintiff's ability to seek specific performance was not extinguished by § 47-33a.

The defendant tries to distinguish *Texaco Refining & Marketing, Inc.*, by arguing that in that case, there was no dispute that the option was exercised during a lease period prescribed by the lease agreement, whereas here, the lease period prescribed in the lease agreement had ended in 1999.[10] Our Supreme Court in *Texaco Refining & Marketing, Inc.*, however, did not rely on the validity of the underlying option under the contract when it determined that the eighteen month provision of § 47-33a does not begin to run until the option is exercised. The existence of a valid option at the time the plaintiff exercised it is governed by the agreement and not by § 47-33a.[11]

---

[10] Specifically, the defendant argues: "What happened here is not . . . controlled by *Texaco Refining & Marketing, Inc.*, for the simple reason that here the plaintiff attempted to exercise a contractual option to purchase right that had expired years previously."

[11] Because of our resolution of the defendant's primary argument that some date other than the date the plaintiff exercised his option was the relevant date, we need not address his various subsidiary arguments as to

## II

The defendant next raises various claims attacking the court's determination that the plaintiff exercised a valid option, pursuant to the agreement, in March, 2004. Specifically, the defendant first argues that the portion of the contract dealing with the option to buy was invalid after May 1, 1992, as not satisfying the statute of frauds. Second, the defendant argues that the court improperly relied on extrinsic evidence in interpreting the terms of the contract, in violation of the parol evidence rule.

## A

The defendant argues that the agreement did not satisfy the statute of frauds, and, therefore, the plaintiff was not entitled to specific performance. Neither party argues that the agreement to lease with an option to purchase violated the statute of frauds at the time it was written. Rather, the defendant argues that the agreement was impermissibly modified at some later point and that this modification was not sufficiently memorialized. The defendant cites two changes in the original agreement that he argues rendered the agreement and the option invalid. The defendant first

why other dates are the appropriate trigger dates. We do note one subsidiary argument, however, because, if correct, the argument might have had independent force. The defendant argues that General Statutes § 47-33a (b) provides that any extension of an option requires compliance with various recordation statutes. The defendant quotes the text of § 47-33a (b): "[T]he interest may be extended only by reexecution of the written agreement or by execution of a new written agreement, provided the agreement, whether reexecuted or newly executed, *shall be recorded* as directed by sections 47-10 and 47-17." (Emphasis supplied by the defendant.) The defendant interprets "interest" as the plaintiff's ability to exercise the option. When read in conjunction with General Statutes § 47-33a (a), however, it becomes clear that the relevant "interest" is the plaintiff's ability to purchase the property and seek specific performance once the option has been exercised, and it is this period which, if extended beyond eighteen months, must be done in conformance with the relevant statutory provisions.

notes that the rental fee was reduced from $796.33 to $500 per month. Second, the defendant notes that the written lease was to end, after various exercised extensions, under the agreement on May 1, 1999, but that the plaintiff was still leasing the property in March, 2004.

The court ruled orally that the statute of frauds did not apply to this case. Leases of land for more than one year in duration traditionally have been subject to the provisions of the statute of frauds. *Janes* v. *Finny*, 1 Root (Conn.) 549, 549 (1793). Connecticut's modern statute of frauds is codified at § 52-550. See *Milazzo* v. *Schwartz*, 44 Conn. App. 402, 406, 690 A.2d 401, cert. denied, 240 Conn. 926, 692 A.2d 1282 (1997). General Statutes § 52-550 (a) provides in relevant part: "No civil action may be maintained . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property" unless "the agreement . . . is made in writing and signed by the party, or the agent to the party, to be charged . . . ." Option contracts for the purchase of land must also satisfy the statute. *Montanaro Bros. Builders, Inc.* v. *Snow*, 190 Conn. 481, 485, 460 A.2d 1297 (1983). Attempted oral modifications of prior existing valid contracts have been held to be subject to the statute of frauds, unless partial performance takes the oral modification out of the statute of frauds. *Union Trust Co.* v. *Jackson*, 42 Conn. App. 413, 419, 679 A.2d 421 (1996).

The defendant argues that the rental reduction from $796.33 to $500 per month was not in writing and so was invalid. From this, the defendant concludes that the plaintiff was in breach of the contract for not paying the $796.33 per month, and therefore was not entitled to specific performance. The parties agree that, in May, 1992, the plaintiff requested, and the defendant allowed, the plaintiff to reduce his rent to $500 per month.

The rent specified in a written lease may be reduced by oral agreement, at least between the original lessor

and lessee, without violating the statute of frauds. *Baier* v. *Smith*, 120 Conn. 568, 572, 181 A. 618 (1935); 1 Restatement (Second), Property, Landlord and Tenant § 2.4, p. 89, illustration (4) (1977). The agreement may be proved by the lessee's offer and the lessor's acceptance without protest of the reduced payment. *Baier* v. *Smith*, supra, 572.

Here, the court found that the parties agreed orally to reduce the rent. There is no dispute that the plaintiff actually did pay a rental amount less than that prescribed in the original agreement. There is also no dispute that the defendant received the payment. Therefore, we conclude that the rental modification was valid and not subject to the statute of frauds.

The defendant also argues that the court impermissibly relied on the plaintiff's testimony to determine that the plaintiff would receive a $500 credit toward the purchase price of the land for each month that he paid the $500 rent. The defendant claims that the $500 payments were solely rent and should not be credited to the purchase price, even if the option could still be exercised. This argument relates to the findings of the court, based on all of the evidence, including the testimony of both parties, that the $500 payments should be credited to the purchase price, and not to the statute of frauds.

The court reviewed the agreement to determine how much of the plaintiff's $500 rent should be credited to him for payment toward the purchase price. The agreement provides in relevant part: "If Lessee, having complied with terms of the lease, wishes to buy after May 1, 1993, he will receive a further credit of $666.66 . . . for each month after May 1, 1993, toward the purchase price of the premises." The agreement states that future rents will be credited to the purchase price. The agreement does not state how much of the plaintiff's

rent should be credited toward the purchase price in the event that the plaintiff pays less than $666.66 per month. The defendant concedes that 142 monthly payments of "$500 per month were paid and received by the defendant covering May, 1992, through March, 2004."

The court noted that the parties disagreed over the effect of the reduced payments. The defendant does not argue that the plaintiff did not actually pay these amounts but rather that the change in rent affected the option to purchase. He appears to argue that the plaintiff forfeited any right to have the payments credited against the purchase price and that, therefore, the plaintiff did not pay the full purchase price. The court rejected this argument, as we do, on the basis of the evidence introduced, and credited the plaintiff with the rental amounts paid after May, 1992.

The defendant next argues that the agreement was invalidly modified because the lease, as provided for in the written agreement, expired in 1999. The defendant argues that because the lease extension was not memorialized, the contract violated the statute of frauds, which rendered the option invalid at least as of March, 2004. We disagree.

We note initially that there is no requirement, on the face of the agreement, that the plaintiff must exercise his option while validly leasing the property.[12] The option to purchase states that if the plaintiff wants to buy "[o]n and after May 1, 1993," he will receive certain credits toward the purchase price. Both parties appear to agree that a valid lease was a requirement, however. The question, then, becomes whether the plaintiff was

---

[12] The defendant does not argue, and so we need not determine, whether an option to purchase private property with no termination date is invalid as violating the rule against perpetuities. See *Texaco Refining & Marketing, Inc.* v. *Samowitz*, supra, 213 Conn. 683–85; see also *H. J. Lewis Oyster Co.* v. *West*, 93 Conn. 518, 533, 107 A. 138 (1919).

validly leasing the defendant's property at the time that he exercised his option.

When a lessor-lessee relationship is evidenced by payment and receipt of rent, and there is no writing memorializing the intended duration of the lease, the law presumes that the lease is a year to year lease. *Handy* v. *Barclay*, 98 Conn. 290, 294, 119 A. 227 (1922). Such yearly leases are not subject to the statute of frauds and, as such, are valid even when the agreement is not in writing. See id.

Here, the plaintiff continued to make rental payments after 1999 and after the written agreement to lease the premises expired. The defendant continued to receive the payments, and thus the law presumes that the parties had a valid, year to year lease arrangement. Because the plaintiff exercised the option during a lease period, the exercise was valid.

Furthermore, although the lease may have expired pursuant to the agreement, the option agreement had not. The statements and actions of the parties as described in part I were sufficient as part performance of the option to purchase to provide an exception to the statute of frauds, allowing the agreement to be specifically enforced. See *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 55–63, 873 A.2d 929 (2005).

B

The defendant finally argues that the court impermissibly considered parol evidence in determining the meaning of the agreement.

The parol evidence rule ordinarily prohibits a court from considering extrinsic evidence in interpreting an agreement when that evidence tends to alter the explicit terms of the agreement. *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 733, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). However, "[t]he parol

evidence rule does not of itself . . . forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract." (Internal quotation marks omitted.) *Heaven* v. *Timber Hill, LLC*, 96 Conn. App. 294, 307, 900 A.2d 560 (2006). When deciding whether to award specific performance, the court does not consider the validity of the contract alone, but, once it has found a valid contract, takes into account other relevant interactions between the parties to determine whether a grant of specific performance would satisfy the principles of equity. See *Webster Trust* v. *Roly*, supra, 261 Conn. 284.

Here, the court reviewed a letter written from the defendant to the plaintiff, dated February 28, 2004. In the letter, the defendant makes reference both to the plaintiff's $500 per month rent and also to the plaintiff's option to purchase the property. From this the court determined that both parties, shortly before the plaintiff exercised the option, recognized that a valid option existed between them and that the defendant was actively encouraging the plaintiff to make the rental payments in order to keep the option. The court further considered the letter as evidence of how much the plaintiff had already paid to the defendant for the property. We conclude that there was nothing improper about the court's considering evidence of the actions of the parties just prior to the time that the plaintiff sought specific performance in determining whether it should grant such relief to the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.