******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff sought, inter alia, specific performance of an option to purchase certain real property that it had been leasing from the defendant and to recover damages for unjust enrichment. The option to purchase clause was contained in the parties' commercial lease agreement. After the plaintiff filed its complaint, the court granted multiple continuances while the parties engaged in settlement negotiations, during which time the parties entered into a purchase and sale agreement for the property. Thereafter, the defendant filed an answer and special defense, namely, that the purchase and sale agreement superseded the option to purchase in the lease agreement and rendered the action moot. Eight days prior to trial, the defendant moved to dismiss the action, reiterating the mootness argument made in its special defense. Specifically, the defendant argued that the action was moot because it sought the interpretation and enforcement of a lease option that was no longer in effect, depriving the court of subject matter jurisdiction. The plaintiff opposed the motion to dismiss, arguing that the purchase and sale agreement was an executory accord, which was executed as part of the parties' efforts to settle the underlying litigation and which was intended to have no legal effect unless and until the sale actually occurred. Following a hearing, which was limited to the arguments of counsel, the court granted the defendant's motion to dismiss, concluding that it lacked subject matter jurisdiction because, although the allegations in the complaint contemplated an action under the option to purchase clause of the lease agreement, the purchase and sale agreement was the controlling contract for the sale of the property. From the judgment of dismissal, the plaintiff appealed to this court. *Held*:

1. The trial court improperly granted the defendant's motion to dismiss as that court improperly determined that the defendant's motion to dismiss, which was premised on the argument that the purchase option had been superseded and rendered inoperative by the terms of the purchase and sale agreement, implicated mootness and, therefore, subject matter jurisdiction: the defendant's argument was best construed as a legal defense to the plaintiff's allegations, as the defendant itself recognized when it filed its answer, the defendant, as the party raising the special defense, had the burden of proving the facts alleged therein, namely, the existence of the purchase and sale agreement and its implications relative to the merits of the underlying action when it filed its special defense, and the trial court, by adjudicating the special defense by way of a motion to dismiss, impermissibly shifted the burden of proof from the defendant to the plaintiff; moreover, in its motion to dismiss, the defendant was making a factual and legal argument regarding a change in circumstances that occurred after the plaintiff filed its complaint, premised on the parties' intent in executing the purchase and sale agreement, as to why the plaintiff could not succeed on the merits of its complaint, when the proper inquiry with regard to mootness was whether that change would prevent the court from granting any and all practical relief, regardless of the likelihood that the proponent is able to prevail on the merits; accordingly, this court reversed the judgment and remanded the case for further proceedings.

2. Even if this court were to conclude that the defendant's motion to dismiss implicated mootness and the trial court's subject matter jurisdiction, the trial court abused its discretion by failing to hold an evidentiary hearing before granting the motion: although it is within the trial court's discretion to choose when to address jurisdictional issues, be it at the time they arise, after discovery or after a full trial on the merits, it is often prudent to defer action on a motion to dismiss raising issues that are interrelated or inextricably intertwined with the merits of a dispute, particularly in cases involving the motives and purposes of contracting

parties; in the present case, the trial court acknowledged that the issues raised in the complaint were intertwined with and dependent on the interpretation of the purchase agreement and the intent of the parties, as expressed in their agreements, the court had already scheduled the trial when the motion to dismiss was filed and had the discretion to postpone consideration of the mootness issue until after the trial was complete, and, having decided to resolve factual disputes at the motion stage, in particular with regard to the parties' intent and how the purchase and sale agreement should be construed in the context of the ongoing settlement negotiations of the parties, the court was obligated, at the very least, to hold an evidentiary hearing with respect to the disputed jurisdictional facts.

3. The trial court improperly determined that the parties' execution of the purchase and sale agreement rendered the underlying action moot in its entirety: even assuming that the defendant's motion to dismiss implicated mootness and that the lease option no longer had an operative legal effect with regard to the parties' sale of the property, such a determination would have no bearing on the allegations that the defendant was unjustly enriched by the plaintiff's continuing to honor its obligations under the lease, including by continuing to pay rent, even though it did not include any provision requiring the plaintiff to do so; moreover, the court failed to discuss the unjust enrichment allegations and whether it could provide the plaintiff with practical relief even if the purchase and sale agreement superseded the lease agreement, and, at a minimum, it should have denied the motion to dismiss with respect to the unjust enrichment claim.

Argued September 14—officially released November 29, 2022

*Procedural History*

Action to recover damages for, inter alia, unjust enrichment, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the court, *Brazzel-Massaro, J.*, granted the defendant's motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings*.

*Dana M. Hrelic*, with whom were *Timothy G. Ronan* and *Meagan A. Cauda*, and, on the brief, *Johanna S. Katz*, for the appellant (plaintiff).

*Alexander Copp*, with whom was *Neil R. Marcus*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. The present appeal arises out of an action brought by the plaintiff lessee, 307 White Street Realty, LLC, against the defendant lessor, Beaver Brook Group, LLC, to enforce an option to purchase clause in the parties' commercial lease (lease option), which included certain concomitant contractual and statutory obligations related to the Hazardous Waste Establishment Transfer Act, General Statutes § 22a-134 et seq. (Transfer Act). The plaintiff appeals from the judgment of the trial court granting the defendant's motion to dismiss the present action as moot because, after the plaintiff commenced it, the parties executed a purchase and sale agreement regarding the leased property that purportedly supersedes the lease option with respect to the sale of the property such that the court no longer can afford any practical relief to the plaintiff by adjudicating the underlying action. The plaintiff claims on appeal that the court improperly (1) determined that the defendant's motion to dismiss implicated the court's subject matter jurisdiction, (2) failed to hold an evidentiary hearing necessary to resolve disputed material facts, and (3) concluded that the execution of the purchase and sale agreement rendered the plaintiff's action moot in its entirety. For the reasons that follow, we agree with the plaintiff that the court improperly granted the motion to dismiss, and, accordingly, we reverse the judgment of the court and remand for further proceedings.

The following facts, as alleged in the complaint or evidenced as undisputed in the record, and procedural history are relevant to our resolution of this appeal. The plaintiff is an affiliate of Winter Brothers Waste Systems (Winter Bros.), which operates a waste and recycling business in Long Island, New York. The defendant is the owner of commercial property located at 307 White Street in Danbury.

In July, 2011, the defendant leased the 307 White Street property to WWSCT, LLC, another affiliate of Winter Bros. The lease, which was modified by the parties in 2013, contains a detailed lease option that, inter alia, grants the lessee the right to purchase the leased property for $7,250,000. The lease option also contains language addressing obligations of the parties to the contract that could arise pursuant to the Transfer Act if the lease option were exercised.[1] In November, 2013, WWSCT, LLC, assigned its interest in the lease to Winter Bros. Realty Holdings I, LLC. Thereafter, in October, 2017, Winter Bros. Realty Holdings I, LLC, assigned its rights under the lease to the plaintiff.

On June 28, 2016, prior to assigning the lease to the plaintiff, Winter Bros. Realty Holdings I, LLC, had provided the defendant with written notice that it was exercising its right to purchase the property in accord-

ance with the lease option. Prior to receiving this option notice, however, the defendant, through counsel, had sent a letter to Winter Bros. Realty Holdings I, LLC, in which it disputed whether the lease option remained in effect. Moreover, after Winter Bros. Realty Holdings I, LLC, exercised the lease option, the defendant, as alleged in the complaint, "periodically disputed the effectiveness of the exercise of the [lease option] . . . and, by extension, the viability of the [lease option] itself." Although Winter Bros. Realty Holdings I, LLC, and, later, the plaintiff as its assignee, were ready, willing, and able to proceed with the purchase in accordance with the lease option, the defendant ignored the plaintiff's demands to acknowledge its obligations under the lease option, including duties it may have had under the Transfer Act vis-à-vis remediation of the property.[2]

The plaintiff commenced the present action against the defendant in September, 2018. The complaint contains three counts. Count one sounds in both declaratory judgment and unjust enrichment.[3] With respect to the former, the plaintiff seeks a declaration that, "since March of 2017, by virtue of the exercise of the [lease option], [1] the lease is and has been an executory contract for purchase and sale of the property, [2] [the plaintiff] is a vendee under that contract, and [3] the obligations of [the plaintiff] as tenant under the lease, including, without limitation, the obligation to pay rent, were (and remain) extinguished." With respect to unjust enrichment, the plaintiff alleges that, although the lease does not include any provision requiring the plaintiff to continue to pay rent after the lease option is exercised, the plaintiff has continued to pay rent and to perform other responsibilities under the lease, and, therefore, the defendant has been "unjustly enriched by receiving and retaining a benefit to which it is not legally entitled." As to the relief sought with respect to count one, the plaintiff, in addition to seeking a declaration that the defendant has been unjustly enriched, asks for restitution of all rents paid since March, 2017, and "the value of other actions performed by [the plaintiff] or its assignor since March of 2017 that fall within the lease obligations of the tenant."

Count two also seeks a declaratory judgment. Specifically, the plaintiff asks for a declaration that (1) the defendant has taken actions that amounted to an anticipatory repudiation of the lease option, (2) the plaintiff properly and timely executed the lease option, (3) the lease option remains in full force and effect, and (4) the defendant was obligated to transfer title and satisfy its Transfer Act obligations as provided for in the lease option.

Finally, count three is captioned "specific performance." Specific performance is a remedy, not an independent cause of action.[4] Nonetheless, we construe

count three, which incorporates by reference allegations regarding the defendant's repudiation of the lease option, as asserting a cause of action for anticipatory breach of contract for which the plaintiff seeks the equitable remedy of specific performance.

Early in the proceedings before the trial court, the parties sought and received multiple continuances of status conferences and other pretrial hearings, indicating to the court that the parties were engaged in settlement negotiations. In one such continuance, the plaintiff stated that the parties "hope to conclude a settlement agreement that contemplates closing on or about June 28, 2019." In a later request for continuance, the defendant similarly asserted that the parties were "close to settlement" and needed additional time "to finalize same."

On February 25, 2020, the defendant filed an answer and special defense to the complaint. In its special defense, the defendant alleged that the parties, during the period of continuances arising out of the parties' apparent settlement negotiations, had entered into a purchase and sale agreement on or about March 29, 2019, that required the plaintiff to purchase and the defendant to sell the leased property for $7,250,000. Among the differences between the purchase and sale agreement and the lease option were changes to the parties' respective Transfer Act obligations. The closing of the sale was supposed to have occurred on June 28, 2019, and, according to the defendant, it "was ready, willing, and able to convey title to the plaintiff, pursuant to the [purchase and sale agreement]." The defendant alleged, however, that "the plaintiff has refused to attend a closing of title and has failed to proffer the balance of the purchase price due and owing under the contract and has been in default thereof."[5] The defendant also alleged in its special defense that the purchase and sale agreement "supersedes the [lease option] and renders the allegations of the plaintiff's complaint moot."

Sometime later, on November 20, 2020, the court issued notice that it had scheduled a remote video court trial to commence on January 27, 2021.[6] On January 19, 2021, only eight days prior to the start of the trial, the defendant filed the motion to dismiss that is the subject of the present appeal and a memorandum in support of the motion. The defendant argued that the court should dismiss the present action as moot for the same reason it had asserted in its special defense. Namely, it argued that "after this action was commenced . . . the plaintiff and the defendant entered into a purchase and sale agreement . . . which replaces and supersedes the option to purchase in the lease. . . . Because the instant action seeks interpretation and enforcement of a lease option that is no longer of any force or effect, the instant action is moot, thereby depriving [the court]

of subject matter jurisdiction." Much of the defendant's argument relied on a boilerplate merger clause in the purchase and sale agreement that stated that "[t]his [a]greement embodies the entire agreement between the parties and supersedes all prior agreements and understandings relating to the [p]roperty."

The following day, January 20, 2021, the plaintiff sought a continuance of the trial date to April 27, 2021, explaining that it needed "time to reorganize its presentation of evidence" because its chief trial witness had passed away on January 5, 2021, and it "require[d] time to reply to [the defendant's] motion to dismiss, which is based on a 2019 document but filed only one week before trial." The court granted the continuance to August 5, 2021, and ordered the plaintiff to respond to the motion to dismiss by February 26, 2021.

The plaintiff timely filed its memorandum in opposition to the motion to dismiss. It argued that the purchase and sale agreement had been negotiated by the parties as a conditional agreement in an attempt to settle the present litigation and, thus, should be construed as an executory accord that never was intended to replace or supersede the lease or lease option unless and until a sale was consummated. According to the plaintiff, the sale of the subject property that was contemplated by the purchase and sale agreement never occurred, and, thus, because there was never a satisfaction of the accord, the lease option remains in full effect. In support of its argument that the purchase and sale agreement was a conditional contract that had no impact on the court's power to adjudicate the claims under the lease option, the plaintiff points to language in the purchase and sale agreement that states that the plaintiff's obligations to withdraw the present action and to release its claims against the defendant expressly were tied to the closing of the sale of the property, which never occurred.[7] The defendant filed a reply memorandum in support of the motion to dismiss on March 12, 2021.

The court, *Brazzel-Massaro, J.*, conducted a hearing on the motion to dismiss on March 15, 2021. The hearing was limited to the arguments of the parties' counsel. No evidence was presented, including evidence concerning the parties' competing factual assertions regarding their intent in executing the purchase and sale agreement.

On May 5, 2021, the court issued a memorandum of decision granting the motion to dismiss and rendering a judgment of dismissal. The court first reasoned that the plaintiff was correct that, by exercising the lease option, "the relationship between the parties as landlord-tenant transformed into vendor-vendee. However, once the option was exercised, the lease between the plaintiff and the defendant was extinguished." The court then stated that "[t]he allegations of the complaint contemplate an action under the option clause of the lease which no longer exists and bears no legal effect

on the purchase and sale of the property. Once the parties executed the purchase agreement, any issues regarding the purchase and sale of the property must be viewed through the terms of that contract instead of the option clause under the lease. The plaintiff commenced the present action in order to enforce the option. However, the purchase agreement is an enforcement of the option because it expresses the terms and conditions that both parties need to meet in order to consummate the purchase and sale of the property. . . . The plaintiff's argument that the purchase agreement is an executory accord without satisfaction is misguided. When the parties executed the purchase agreement, a new bilateral contract was formed and the exchange of mutual promises between the parties was enough to properly form the contract. Moreover, both parties acknowledge the existence of the executed purchase agreement and both parties express a willingness to fulfill the obligations of the purchase agreement by signing the agreement. Furthermore, the plaintiff did not allege in the complaint or attach any evidence demonstrating the purchase agreement was merely part of ongoing negotiations. Therefore, the purchase agreement is the controlling contract for the purchase and sale of the property." (Citation omitted.)

The court continued: "Although ordinarily the question of contract interpretation being question of the parties' intent, is a question of fact . . . where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . With definitive contract terms available in the purchase agreement, the court can determine what the parties intended when executing the agreement, the purchase and sale of the property. In this case, the parties executed the purchase agreement on May 23, 2019, after the plaintiff commenced the present action. . . . The parties intended to be legally bound and agreed on the purchase price, the closing date of June 28, 2019, and the parties' remedies in the event of default. . . . If the plaintiff seeks performance in purchase of the property, then the plaintiff need only effectuate closing on the property as stated in the purchase agreement." (Citations omitted; footnotes omitted; internal quotation marks omitted.) The court concluded: "Construing the allegations in the complaint in the light most favorable to the plaintiff, the plaintiff did not allege sufficient facts to withstand the defendant's motion to dismiss. *The plaintiff's claims against the defendant are intertwined with, and dependent upon, the interpretation of the purchase agreement.* The language of the purchase agreement indicates the clear intention of the parties to execute a binding purchase and sale of the property. Therefore, the court does not have subject matter jurisdiction." (Emphasis added.) This appeal followed.[8]

The plaintiff claims on appeal that the court improp-

erly granted the defendant's motion to dismiss because (1) the motion did not truly implicate the court's subject matter jurisdiction but rather sought a summary adjudication of the defendant's special defense, (2) the court failed to hold an evidentiary hearing to resolve disputed issues of material fact regarding the intent of the parties, and (3) the parties' execution of the purchase and sale agreement did not render the entirety of the underlying action moot. We address each argument in turn, although we recognize that the issues raised are somewhat overlapping. Ultimately, we are not persuaded that the motion to dismiss raised a valid claim of mootness and, thus, agree that the defendant's motion did not implicate the court's subject matter jurisdiction. Notwithstanding the foregoing, even had the motion to dismiss properly invoked a challenge to the court's jurisdiction, it would have been an abuse of discretion, under the circumstances of this case, for the court to grant the motion without the benefit of an evidentiary hearing or a trial on the merits. Finally, we agree that the portion of count one of the complaint alleging unjust enrichment should have survived the motion to dismiss. In short, we conclude that the court should have denied the motion to dismiss.

We begin our discussion with general legal principles, including those governing our review of a court's granting of a motion to dismiss pursuant to Practice Book § 10-30.[9] "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, *every presumption favoring jurisdiction should be indulged.* . . .

"Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to [Practice Book § 10-30] may encounter different situations, depending on the status of the record in the case. . . . [L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . [If] a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by

undisputed facts established by affidavits submitted in support of the motion to dismiss . . . other types of undisputed evidence . . . and/or public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question . . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. . . .

"Finally, [if] a jurisdictional determination is dependent on the resolution of a critical factual dispute, *it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing* to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. . . . *[If] the jurisdictional facts are intertwined with the merits of the case, the court may in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary, a full trial on the merits has occurred.* . . . In that situation, [a]n evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 614–17, 109 A.3d 903 (2015).

Because mootness implicates a court's subject matter jurisdiction, it is properly raised by way of a motion to dismiss. *We the People of Connecticut, Inc.* v. *Malloy*, 150 Conn. App. 576, 581 n.3, 92 A.3d 961 (2014). "Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . A case becomes moot [if] due to intervening circumstances a controversy between the parties no longer exists." (Citation omitted; internal quotation marks omitted.) Id., 581. "The test for determining mootness is whether a judgment, if rendered, would have any practical legal effect upon an existing controversy. Thus, the central question in a mootness problem is whether a change in the circum-

stances that prevailed at the beginning of the litigation has forestalled the prospect for meaningful, practical, or effective relief." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Burton*, 282 Conn. 1, 13, 917 A.2d 966 (2007).

I

The plaintiff first claims that the court improperly determined that the defendant's motion to dismiss implicated the court's subject matter jurisdiction over the action. According to the plaintiff, rather than raising any colorable issue of subject matter jurisdiction, the motion to dismiss effectively sought summary adjudication of the defendant's special defense, which the plaintiff construes as asserting that the purchase and sale agreement was a novation of the lease option.[10] The plaintiff further argues that by adjudicating the special defense by way of a motion to dismiss, the court necessarily and impermissibly shifted the burden of proof from the defendant to the plaintiff. The defendant suggests that the plaintiff failed to preserve these arguments by raising them before the trial court. Alternatively, it argues that, even if properly preserved, the plaintiff's claim fails because the motion to dismiss raises an issue of mootness that implicates the court's subject matter jurisdiction and is a proper basis for a motion to dismiss. We are persuaded by the plaintiff's arguments.

As a preliminary matter, we briefly address the defendant's argument that the plaintiff's claim is not properly preserved for our review. It is axiomatic that "[a]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619–20, 99 A.3d 1079 (2014). A careful review of the record, including the hearing on the motion to dismiss, convinces us that the gravamen of the argument advanced on appeal was raised with sufficient clarity before the court to provide both the court and the defendant with notice of the same. The plaintiff argued in its opposition to the motion to dismiss that the purchase and sale agreement did not extinguish or supersede the lease option and thus *did not deprive the court of subject matter jurisdiction*. The only ground raised in the motion to dismiss implicating the court's subject matter jurisdiction was mootness. Thus, whether the defendant's motion properly invoked the doctrine of mootness is properly before us for review.

We are unconvinced that the defendant's argument that the terms of the lease option have been superseded and rendered inoperative by the terms of the purchase and sale agreement is one that implicates mootness. Rather, that argument is best construed—as the defend-

ant itself seemed to initially recognize in its answer to the complaint—as a legal defense, either in whole or in part, to the allegations raised in the complaint. In the present case, the defendant pleaded by way of special defense the existence of the purchase and sale agreement and its implications relative to the merits of the underlying action. By doing so, the defendant assumed the burden of proof and persuasion not only regarding the existence of the subsequent purchase and sale agreement and its terms but also whether the parties actually intended for it to supersede any and all aspects of the lease option including any obligations arising thereunder. See *AGW Sono Partners, LLC* v. *Downtown Soho, LLC*, 343 Conn. 309, 323, 273 A.3d 186 (2022) ("a party raising a special defense has the burden of proving the facts alleged therein" (internal quotation marks omitted)). Although the defendant stated without elaboration in its special defense that it believed that the purchase and sale agreement superseded the lease option and thus "render[ed] the allegations of the plaintiff's complaint moot," it did not file a motion to dismiss the action at that time or assert that the court lacked subject matter jurisdiction over the action. Rather, it waited until the eve of trial.[11]

Even the most compelling legal or factual argument that a particular claim or cause of action will fail on its merits will not support a conclusion that the asserted claim or cause of action is moot. This is because the proper inquiry with regard to mootness is not whether some change in circumstances has occurred after the claim or cause of action is asserted that forecloses any chance of success on the merits but, rather, whether that change would prevent the court from granting any and all practical relief *even assuming that the proponent is able to prevail on the merits, no matter how unlikely.* See *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 224–25, 982 A.2d 1053 (2009) ("[w]e can conclude, however, on the basis of the current state of the record before us, that the plaintiffs' claims are not moot because a determination of the controversy in the plaintiffs' favor could result in practical relief to the plaintiffs"); *Washington Mutual Bank* v. *Coughlin*, 168 Conn. App. 278, 287 n.13, 145 A.3d 408 (explaining that mootness doctrine is not truly implicated by argument that appeal would be rendered moot if Appellate Court agreed with appellee on the merits because, "[i]n determining whether an appeal is moot, we *ordinarily do not decide the merits of the claims raised*; rather, we ask whether there is any practical relief that could be granted *even assuming that the appellant prevails on appeal*" (emphasis altered)), cert. denied, 323 Conn. 939, 151 A.3d 387 (2016).

Here, the defendant asserts that the lease option on which the action was based has been superseded by the parties' subsequent execution of a purchase and sale agreement regarding the same leased property. In

other words, the defendant is making a factual and legal argument as to why the plaintiff cannot succeed on the merits of its complaint. The plaintiff's position, however, is that the purchase and sale agreement was executed as part of the parties' efforts to settle the current litigation and was intended to have no legal effect unless the sale actually closed. If the plaintiff is correct, then there remains a possibility that the plaintiff could prevail and obtain practical relief.

We agree with the plaintiff that the motion to dismiss filed by the defendant did not implicate mootness and, thus, did not implicate the court's subject matter jurisdiction. Accordingly, it was not the proper procedural vehicle to address the true nature and legal effect of the purchase and sale agreement. On that basis, the court should have denied the motion to dismiss.

II

The plaintiff next argues, in the alternative, that even if this court determines that the motion to dismiss properly raised a claim of mootness thereby implicating the court's subject matter jurisdiction, the court nevertheless improperly failed to hold an evidentiary hearing to resolve disputed issues of jurisdictional fact. We agree with the plaintiff that it was an abuse of discretion for the court to have decided the issues raised in the motion to dismiss solely on the basis of the papers and arguments of counsel without the benefit of an evidentiary hearing.

Generally speaking, it often will be prudent to defer action on a motion to dismiss raising issues that are interrelated or inextricably intertwined with the merits of a dispute, particularly in cases involving the motives and purposes of contracting parties. See *Conboy* v. *State*, 292 Conn. 642, 653 n.16, 974 A.2d 669 (2009); *Anderson* v. *Bloomfield*, 203 Conn. App. 182, 197, 247 A.3d 642 (2021). Our Supreme Court, however, has left it within the discretion of the court to address jurisdictional issues at the time raised, stating, "the court may *in its discretion* choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary, a full trial on the merits has occurred." (Emphasis added.) *Conboy* v. *State*, supra, 653 n.16. Whether the court properly exercises that discretion in a given case, however, is not beyond our review.

"Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The salient inquiry is whether the court could have reasonably concluded as it did. . . . It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds. . . . In determining

whether there has been an abuse of discretion, much depends upon the circumstances of each case." (Internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, 205 Conn. App. 46, 61–62, 256 A.3d 684, cert. denied, 339 Conn. 909, 261 A.3d 744 (2021).

Here, the court acknowledged in its decision on the motion to dismiss that the issues raised in the complaint were "intertwined with, and dependent upon, the interpretation of the purchase agreement." Whether the parties have a binding agreement for the sale of the subject property and, if so, whether the operative contract governing that sale is the lease option, the subsequently executed purchase and sale agreement, or some combination thereof requires consideration of the parties' intent as expressed in their agreements. Thus, resolution regarding any potential mootness of the action or claims made therein was intertwined with the merits of the action. This is further exemplified by the fact that the defendant originally raised the argument that the purchase and sale agreement wholly superseded the lease option such that the plaintiff was not entitled to judgment on any count of its complaint as a special defense to the complaint and not as a motion to dismiss.

Even if the motion properly raised a question of mootness, it was within the court's discretion either to resolve that question or to postpone consideration of it until it had conducted an evidentiary hearing or a trial, which in this case already had been scheduled at the time the motion to dismiss was filed. See footnote 11 of this opinion. Although there is no indication in the record that either party requested that the court hold an evidentiary hearing at which they could enter evidence or call witnesses, the pleadings before the court nonetheless established that material facts involving the parties' true intent and motives remained in dispute.[12] Having decided to resolve factual disputes at the motion stage, in particular with regard to the parties' intent and how the purchase and sale agreement should be construed in the context of the ongoing settlement negotiations of the parties, the court was obligated, at the very least, to hold an evidentiary hearing with respect to these disputed jurisdictional facts.[13] Because a motion to dismiss ordinarily is limited to resolving issues of jurisdiction rather than the merits of the action, we agree that the court improperly granted the motion to dismiss without first conducting an evidentiary hearing.

Our conclusion finds support in this court's decision in *Air-Care N.O. Nelson Co.* v. *Patchet*, 5 Conn. App. 203, 205–207, 497 A.2d 771 (1985). In that case, in which the parties similarly reached a subsequent agreement attempting to settle a contract dispute; id., 203; this court held that the trial court improperly dismissed the action without holding an evidentiary hearing necessary "to make an evidentiary determination of the intention

of the parties." Id., 205. We explained that whether a settlement agreement constitutes an executory accord or a substitute agreement turns upon the intent of the parties and that "[i]t is frequently difficult to determine as a matter of fact whether the parties agreed that the settlement agreement itself constituted satisfaction of the original cause of action, or whether the performance of the agreement was intended to be the satisfaction." (Emphasis omitted.) Id. This court concluded: "The intent of the parties to a contract is generally considered to be a question of fact. . . . Nothing in the record or transcript of this case indicates that the trial court received any evidence or considered the question of whether the parties intended the agreement itself or the performance of the agreement to constitute satisfaction of the original claim." (Citation omitted.) Id., 206.

In the present case, the trial court, like the trial court in *Air-Care N.O. Nelson Co.*, rejected the plaintiff's assertion that the purchase and sale agreement was executed as a means to settle the parties' dispute over the sale of the property, and that it was only intended to act as a substitute contract upon performance of the new agreement, without the benefit of any evidence regarding the parties' intent. Like in *Air-Care N.O. Nelson Co.*, we are persuaded that an evidentiary hearing devoted to the question of the parties' intent in entering into the purchase and sale agreement would have best served "the interests of justice" in the present case. See id. This is particularly true in the present case in which the motion to dismiss was filed so close to trial. Accordingly, even if the motion to dismiss properly invoked a challenge to the court's jurisdiction, the court abused its discretion, under the circumstances of this case, by granting the motion without the benefit of an evidentiary hearing or a trial on the merits.

### III

Finally, the plaintiff argues that the court improperly determined that the parties' execution of the purchase and sale agreement rendered the underlying action moot in its entirety. The plaintiff argues that its claims under the lease option were not moot but that, even if they were moot, the court still could have awarded it meaningful relief with respect to its unjust enrichment cause of action in count one. We agree with the plaintiff that, at the very least, the court should have denied the motion to dismiss with respect to the plaintiff's claim of unjust enrichment.

As we already have explained in part I of this opinion, we are not convinced that the defendant's argument that the lease option was superseded by the purchase and sale agreement implicated the mootness doctrine rather than simply providing a basis for ruling in favor of the defendant on the merits of the action. Even assuming that it did implicate mootness, however, and further assuming that the lease option no longer had

any operative legal effect vis-à-vis the parties' sale of the property, such a determination would have no bearing on the plaintiff's allegations in count one of the complaint that the defendant was unjustly enriched by the plaintiff's continuing to honor its obligations under the lease, including by continuing to pay rent. At a minimum, the court should have denied the motion to dismiss with respect to the unjust enrichment allegations.

As the defendant correctly argues, and the plaintiff concedes, the purchase and sale agreement provides that the plaintiff would continue to pay rent to the defendant under the terms of the lease. That obligation, however, expressly arises "from and after the [e]ffective [d]ate" of the purchase and sale agreement, which is April, 2019. The plaintiff's claim of unjust enrichment involves allegations that it made lease payments that the defendant was not legally entitled to beginning in March, 2017.

The court failed to discuss the unjust enrichment allegations and whether it could provide the plaintiff with practical relief even in the face of a superseding contract. We agree with the plaintiff that, at the very least, the court should have denied the motion to dismiss with respect to the plaintiff's claim of unjust enrichment. In sum, for the reasons provided, we are convinced that the court improperly granted the defendant's motion to dismiss.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[1] The Transfer Act is a state environmental statute that was "enacted to protect purchasers of property from being liable for the subsequent discovery of hazardous waste on the property" and that "subjects transferors of establishments to reporting, investigation and remediation requirements that depend on the environmental condition of the property being transferred." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 40, 861 A.2d. 473 (2004). "Establishment" is a defined term meaning "any real property at which or any business operation from which (A) on or after November 19, 1980, there was generated more than one hundred kilograms of hazardous waste in any one month, (B) hazardous waste generated at a different location was recycled, reclaimed, reused, stored, handled, treated, transported or disposed of, (C) the process of dry cleaning was conducted on or after May 1, 1967, (D) furniture stripping was conducted on or after May 1, 1967, or (E) a vehicle body repair facility was located on or after May 1, 1967. . . ." General Statutes § 22a-134 (3).

[2] The 307 White Street property previously had been identified as containing environmental contamination that required remediation, but the parties do not agree on who is responsible for ongoing remediation and reporting obligations imposed by the Transfer Act.

[3] The defendant never filed a request to revise asking to separate these causes of action into different counts. See Practice Book § 10-35.

[4] "Specific performance is an equitable remedy whereby courts may compel the performance of land sale contracts, and certain other contracts, pursuant to the principles of equity. . . . Every complaint asking for specific performance of a contract to convey real estate is addressed to the discretion of the court, and will not be granted unless the contract is made according to the requirements of law, and is fair, equitable, reasonable, certain, mutual, on good consideration, consistent with policy and free from fraud, surprise or mistake. . . . Even when a valid contract is found, however, there is no right to specific performance, but rather [t]he granting of specific perfor-

mance of a contract to sell land is a remedy which rests in the broad discretion of the trial court depending on all of the facts and circumstances when viewed in light of the settled principles of equity." (Citations omitted; internal quotation marks omitted.) *Battalino* v. *Van Patten*, 100 Conn. App. 155, 159–60, 917 A.2d 595, cert. denied, 282 Conn. 924, 925 A.2d 1102 (2007).

[5] Despite these allegations, the defendant did not assert any counterclaim against the plaintiff on the basis of an alleged breach of the purchase and sale agreement and seeking specific performance thereof. Further, to the extent that the defendant believed that the parties had reached an enforceable out-of-court settlement, the defendant did not request a hearing pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 811–12, 626 A.2d 729 (1993) (*Audubon*). An *Audubon* hearing "is conducted to decide whether the terms of a settlement agreement are sufficiently clear and unambiguous so as to be enforceable as a matter of law." *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 499 n.5, 4 A.3d 288 (2010).

[6] The trial date was delayed at the request of the parties. Following a teleconference with the parties on September 10, 2020, the court issued an order stating that it was "prepared to assign a trial date but the parties have entered into an agreement which requires approval from the [Connecticut Department of Energy and Environmental Protection (DEEP)]. Counsel have advised the court that the status of the approval is not known. The court has ordered counsel to contact the department to determine where the approval stands. Counsel are to submit a written status report on or before September 25, 2020, as to the progress with approval from [DEEP] and the time frame for the approvals required and the time to complete these obligations pursuant to the Transfer Act to complete the sale. After the submission of the status [report], the court will determine if the parties require a trial date or an additional teleconference with the court." The parties filed the required joint status report on September 25, 2020, and requested that the court hold a status conference within sixty to ninety days. The status report indicated as follows: "In the last three to five months, the plaintiff's retained Licensed Environmental Professional and other representatives have had numerous phone meetings with representatives of [DEEP] and the United States Environmental Protection Agency (Region 1) (EPA), both jointly and separately, respecting approval and/or sign-off on (i) allowable concentrations in parts per million (ppm) of polychlorinated biphenyls (PCBs) that can remain on site (both in soils and beneath floors of structures) and (ii) design of regulatorily appropriate engineering controls to be installed at the site. That dialogue, and the sharing of additional testing data, and data analysis, is ongoing. [The parties] are also working to confirm the acceptance by the EPA and DEEP of [the defendant's] compliance with certain notices. . . . The parties project that the time needed to complete the items mentioned . . . will be sixty to ninety days. . . . The parties anticipate that time needed to complete transfer and settlement after the items mentioned . . . are completed will be forty-five to sixty days."

[7] Each side blames the other for the failure of the parties to consummate the sale of the subject property as contemplated under the purchase and sale agreement.

[8] In addition to filing this appeal, the plaintiff also filed a timely motion for reconsideration that raised many of the same arguments it advances on appeal. The defendant filed an objection on June 7, 2021, and, that same day, the court issued an order stating that it would hold a hearing on June 21, 2021, to hear argument "as to whether the court should permit reargument or reconsideration." On June 21, 2021, however, the court issued orders marking off the motion and the objection. The court explained that no action was necessary because an appeal had been filed.

Although not directly at issue in the present appeal, we feel it is important to reiterate that the filing of an appeal does not stay a trial court's continuing authority to adjudicate any properly filed motions to reargue, reconsider or open the judgment that is the subject of the appeal; see Practice Book § 11-11; irrespective of the possibility that the trial court's action on such a motion potentially could render the appeal moot. See *Ahneman* v. *Ahneman*, 243 Conn. 471, 482–84, 706 A.2d 960 (1998). Said another way, although the filing of an appeal may, in certain instances, result in a stay of actions to *enforce or carry out* the judgment on appeal; see Practice Book § 61-11 et seq.; any such appellate stay does not affect a court's authority to rule on motions filed with the trial court, including any Practice Book § 11-11 motions.

[9] Practice Book § 10-30 provides: "(a) A motion to dismiss shall be used

to assert: (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) insufficiency of process; and (4) insufficiency of service of process.

"(b) Any defendant, wishing to contest the court's jurisdiction, shall do so by filing a motion to dismiss within thirty days of the filing of an appearance.

"(c) This motion shall always be filed with a supporting memorandum of law and, where appropriate, with supporting affidavits as to facts not apparent on the record."

[10] "Novation may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished. . . . Novation and substitute contract often are used interchangeably to refer to a subsequent contract. . . . Our Supreme Court has stated that a novation [usually refers] to instances in which a new party is introduced into the new contract, while substitute contract is the designation commonly employed to cover agreements between the same parties which supersede and discharge prior contract obligations." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Willamette Management Associates, Inc.* v. *Palczynski*, 134 Conn. App. 58, 71–72, 38 A.3d 1212 (2012). Thus, under our Supreme Court's definition, the defendant's special defense asserts the existence of a substitute contract that would foreclose any enforcement of the original lease option. Whether the substitute contract was intended by the parties fully to supersede the lease option, however, is an issue of fact that is disputed by the parties.

[11] If the defendant believed that the plaintiff's action was moot as asserted, it could have filed a motion to dismiss at that time rather than answering the allegations of the complaint. Although mootness implicates justiciability and the subject matter jurisdiction of the court and certainly can be raised at any time; *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 222, 982 A.2d 1053 (2009); we note that the defendant waited until the eve of trial to press adjudication of the purported mootness issue. The defendant's delay in filing the motion to dismiss factors into our consideration of whether the court properly exercised its discretion in choosing not to postpone a final decision on the motion until after a trial on the clearly intertwined merits of the action.

[12] "Parties may alter any term of an existing contract by entering into a subsequent contract. . . . The contract as modified becomes a new contract between the parties. . . . The meaning to be given subsequent agreements . . . depends on the intention of the parties. As intention is an inference of fact, the conclusion is not reviewable unless it was one which the trier could not reasonably make." (Citation omitted; internal quotation marks omitted.) *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 189–90, 2 A.3d 873 (2010). "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [if] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]. . . . If the language of [a] contract is susceptible to more than one reasonable interpretation, [however] the contract is ambiguous." (Internal quotation marks omitted.) *Tomey Realty Co.* v. *Bozzuto's, Inc.*, 168 Conn. App. 637, 646–47, 147 A.3d 166 (2016).

[13] We recognize that prior decisions of this court contain language that could be construed as contradictory regarding a trial court's obligation to hold an evidentiary hearing in the face of disputed jurisdictional facts, suggesting on the one hand that a trial court must always hold an evidentiary hearing whenever it determines that resolution of a motion to dismiss turns on a disputed jurisdictional fact; see *Property Asset Management, Inc.* v. *Lazarte*, 163 Conn. App. 737, 749, 138 A.3d 290 (2016) ("[a] court is required to hold an evidentiary hearing before adjudicating a motion to dismiss only if there is a genuine dispute as to some [material] jurisdictional fact"); and, on the other hand, declining to find error in a trial court's decision to rule on a motion to dismiss without holding an evidentiary hearing because the parties never requested an evidentiary hearing. See, e.g., *Walshon* v. *Ballon Stoll Bader & Nadler, P.C.*, 121 Conn. App. 366, 371, 996 A.2d 1195 (2010) ("it is the plaintiff's burden both to request an evidentiary hearing and to present evidence that establishes disputed factual allegations in support of an evidentiary hearing, and [if] the plaintiff *failed to do either*, the court [may] properly [decide] the motion [to dismiss] on the basis of the pleadings and affidavits" (emphasis added)). In those cases in which we have noted the failure of a party to request an evidentiary hearing, we inevitably determined that the party also failed to present evidence that raised a dispute regarding a fact upon which jurisdiction turned; see, e.g., *Priore* v. *Haig*,

196 Conn. App. 675, 686, 230 A.3d 714 (2020), rev'd on other grounds, 344 Conn. 636, 280 A.3d 402 (2022); and thus have concluded that the court properly could decide the motion on the undisputed facts contained in the record before it. It remains axiomatic, however, that in a case where the pleadings and submissions of the parties themselves necessarily raise a dispute about a fact that is central to the court's jurisdictional determination, the court has an independent duty, even in the absence of a parties' request, to hold an evidentiary hearing prior to resolving the factual dispute. See *Cuozzo* v. *Orange*, supra, 315 Conn. 616–17 ("a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties" (internal quotation marks omitted)).